IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR23-0021-CJW

DOMINIQUE HOLLIDAY, TRANSCRIPT OF PLEA TAKING

Defendant.
___________________________________/

The Plea Taking held before the Honorable Mark A. Roberts, Magistrate Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 111 Seventh Avenue Southeast, Cedar Rapids, Iowa, December 28, 2023, commencing at 2:28 p.m.

APPEARANCES

For the Plaintiff: DILLAN EDWARDS, ESQ.
Assistant United States Attorney
111 Seventh Avenue Southeast
Cedar Rapids, IA 52401

For the Defendant: BRIAN D. JOHNSON, ESQ.
Jacobsen, Johnson & Wiezorek
Suite 501
222 Third Avenue Southeast
Cedar Rapids, IA 52401

Transcribed from digital recording by: Shelly Semmler, RDR, CRR
320 Sixth Street
Sioux City, IA 51101
(712) 233-3846

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

(The following transcript was prepared from an audio recording.)

* * * *

P R O C E E D I N G S

THE COURT: Please be seated. Case now before the Court is the United States versus Dominique Holliday, Number 23-CR-21. The United States is represented by Assistant United States Attorney Dillan Edwards. The defendant is here in person with his attorney, Brian Johnson. And the matter comes on for a change of plea.

Mr. Holliday, you've been charged in an indictment that has two counts. Count 1 charges you with the crime of conspiracy to distribute a controlled substance. Count 2 charges you with conspiracy to commit money laundering. Have you received a copy of the indictment?

THE DEFENDANT: Yes, yes, Your Honor.

THE COURT: And that microphone will move around to where you can be comfortable talking into it.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had an opportunity to discuss these charges in detail with Mr. Johnson?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I understand that you intend to plead guilty to Counts 1 and 2 of the indictment this afternoon. Is that correct?

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm a United States magistrate judge. And this case has also been assigned to a United States District Court judge. You have the right to have a district court judge preside over your guilty plea proceeding. I can preside over the hearing today but only with your voluntary consent. Is it agreeable with you that I preside over this hearing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let the record also reflect that at document number 29 of the Court's file is a written consent to proceed before a magistrate judge, and it appears to be signed by Mr. Holliday and Mr. Johnson.

So, Mr. Holliday, with your consent, I will preside over the hearing. And as Mr. Johnson may have mentioned, I need to ask you some questions, and your answers need to be under oath. So at this point I'm going to ask you to please stand and raise your right hand so I can administer the oath.

DOMINIQUE HOLLIDAY, DEFENDANT, SWORN

THE COURT: You can now be seated. You're under oath. If you knowingly lie or make a false statement, the government could charge you with the crimes of perjury or making a false statement. And if you're convicted of one of those offenses, you could be

sentenced to a period of imprisonment and fined. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's important then that you answer my questions truthfully because if you were to lie or make a false statement today, the government could use those very statements against you to charge you with those offenses. Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Now, the first few questions I have for you, it's really not my desire to pry, but I have to be sure that you're in a mental state today where you can voluntarily and knowingly enter a guilty plea.

Would you please state your full name.

THE DEFENDANT: Dominique Jesus Holliday.

THE COURT: How old are you, Mr. Holliday?

THE DEFENDANT: I'm 28.

THE COURT: How far have you gone in school?

THE DEFENDANT: I'm in -- I'm still in my first year of college.

THE COURT: Do you have any difficulty reading or understanding the English language?

THE DEFENDANT: No, I do not.

THE COURT: Have you ever suffered from depression, anxiety, or any other mental illness?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you ever used illegal drugs or abused alcohol?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you think your prior drug or alcohol use might affect your ability to understand the proceedings here today?

THE DEFENDANT: No, I don't, Your Honor.

THE COURT: Are you taking any medications or prescription drugs for any mental or physical condition?

THE DEFENDANT: No, none, Your Honor.

THE COURT: Can you think of any reason that you might have difficulty understanding these proceedings?

THE DEFENDANT: No, I do not, Your Honor.

THE COURT: It's important that you understand everything that we do here today, so if there is something that you don't understand, would you please stop us and let us know?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also we're not in a hurry, so if you want to stop and visit with Mr. Johnson about anything that comes up, we'll make time for the two of you to visit privately.

Mr. Johnson, do you have any reason to believe that

Mr. Holliday is not competent to enter a guilty plea?

MR. JOHNSON: No, Your Honor.

THE COURT: At this point, Mr. Holliday, I need to visit with you about all the rights you will be giving up if you do plead guilty today. And first, of course, you don't have to plead guilty today. You could go forward and have a jury trial if you prefer. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have the right to have a lawyer help and represent you during every stage of this case.

Mr. Johnson, can you remind me, were you appointed in this case?

MR. JOHNSON: I was, Your Honor.

THE COURT: In this case the Court appointed Mr. Johnson to represent you, and if you wanted to go to trial and fight these charges, he would continue to represent you all the way through that trial at no expense to you. Do you understand your right to an attorney?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Have you been generally satisfied with the services provided by Mr. Johnson?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: You also have the right to a speedy and public trial before a jury of 12 people selected from a cross-section of the community. Both you and Mr. Johnson would have a role in selecting the people who would serve on your jury. And the jurors would swear under oath to try your case fairly based only on the evidence admitted at trial and based on the law given to them by the judge.

Any verdict by the jury would have to be unanimous, and that just means that all 12 people on your jury would have to agree on the verdict. Do you understand your right to a jury trial?

THE DEFENDANT: I do understand that, Your Honor.

THE COURT: There's also a presumption of innocence. And that means if your case went to trial, the judge would tell the jury that you're presumed innocent of these charges, and that presumption of innocence could only be overcome if the government produced evidence that proved your guilt beyond a reasonable doubt. In fact, the trial judge would tell the jury that that presumption of innocence alone could be enough for you to be found not guilty. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also have the right to confrontation. And that means if your case went to trial, the government would have to call its witnesses here in open court. You would have a right to see those witnesses, and they could see you. You wouldn't have to confront the government's witnesses if you didn't want to, but if you wanted to challenge their testimony, you could do so by having Mr. Johnson cross-examine them.

But if you plead guilty here today, Mr. Holliday, you'll be giving up your right to confront witnesses on these charges. Do you understand that?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: Then finally, you have the right to present a defense. In a criminal case like this, the burden of proof is always on the government, and it would never shift to you. So if your case went to trial, you wouldn't have to produce any evidence if you didn't want to. But if you wanted to present a defense, you could. For example, you could call witnesses, or you could offer exhibits into evidence. And if you couldn't afford to have witnesses served with subpoenas or get those witnesses here to the courthouse, I'd make the government pay those expenses for you.

But again, Mr. Holliday, if you plead guilty here today, you'll be giving up your right to present a

defense to these charges. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then finally, you have the right to remain silent. You can testify at your trial if you wanted to, but you wouldn't have to testify, and nobody could make you testify. And if you chose not to testify, the prosecutor wouldn't say anything about that to the jury, and the judge would instruct the jurors that they could not take into account in any way or even discuss among themselves the fact that you did not testify in arriving at their verdict. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In summary, Mr. Holliday, if you plead guilty here today, there will be no trial. You will be found guilty based on your plea just as if there had been a trial and just as if a jury had deliberated and returned a guilty verdict against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, before I can recommend that the district court accept your guilty pleas, I need to be satisfied that you are, in fact, guilty as charged in the indictment. And for you to be found guilty of conspiracy to distribute a controlled substance as charged in Count 1 of the indictment, the government would have to prove 4

things beyond a reasonable doubt. I want to go over those four things with you now. What I plan on doing is reading each of these twice. The first time I read one, I'll just make sure that you understand it. Then I'll read it again, and I'll ask you if it's true.

So the first thing the government would have to prove with respect to Count 1 is that between in or about April 2021 and continuing to on or about December 21, '21, here in the Northern District of Iowa, 2 or more persons reached an agreement or came to an understanding to distribute fentanyl. Do you understand the first thing the government would have to prove?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: Is it true that between in or about April 2021 and continuing to on or about December 21, 2021, in the Northern District of Iowa, 2 or more persons reached an agreement or came to an understanding to distribute fentanyl?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And then second, the government would have to prove that you voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some time later while it was still in effect. Do you understand the second thing the government would have to prove?

THE DEFENDANT: I do understand, Your Honor.

THE COURT: Is it true that you voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some later time while it was still in effect?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Third, the government would have to prove that at the time you joined in the agreement or understanding you knew the purpose of the agreement or understanding. Do you understand the third thing the government would have to prove?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it true that at the time you joined in the agreement or understanding you knew the purpose of the agreement or understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And then fourth, the government would have to prove that the agreement or understanding involved 40 grams or more of a mixture or substance containing a detectable amount of fentanyl. Do you understand the fourth thing the government would have to prove?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it true that the agreement or understanding involved 40 grams or more of a mixture or

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*to purchase a complete copy of the transcript.*

substance containing a detectable amount of fentanyl?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then let's turn to Count 2. For that charge the government would have to prove three things beyond a reasonable doubt. And we'll do the same thing with those.

The first thing the government would have to prove on Count 2 is the long one, and it provides that the government would have to prove from or about August 30, 2021, and continuing to on or about December 21, 2021, in the Northern District of Iowa, 2 or more persons reached an agreement or came to an understanding to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which transactions involved the proceeds of specified unlawful activity, that is, knowingly and intentionally distributing and possessing with intent to distribute controlled substance knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. Do you understand the first thing the government would have to prove?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it true that from or about

August 30, 2021, and continuing to on or about December 21, 2021, in the Northern District of Iowa, 2 or more persons reached an agreement or came to an understanding to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which transactions involved the proceeds of specified unlawful activity, that is, knowingly and intentionally distributing and possessing with intent to distribute controlled substances knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activities? Is all of that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Second, the government would have to prove that you voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some later time while it was still in effect. Do you understand the second thing the government would have to prove?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: Is it true that you voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some later time while it was still in effect?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And then finally, for Count 2, the government would have to prove beyond a reasonable doubt that at the time you joined in the agreement or understanding you knew the purpose of the agreement or understanding. Do you understand the third thing the government would have to prove?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: Is it true that at the time you joined in the agreement or understanding you knew the purpose of the agreement or understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Johnson, was any formal plea offer made to Mr. Holliday?

MR. JOHNSON: Yes, Your Honor. At least one written plea offer was -- was passed along. If there was a second one, it was just to extend deadlines, but nothing substantively changed in them.

THE COURT: And I take it that you reviewed that with Mr. Holliday and the two of you decided to reject that agreement and go forward with a plea without an agreement today? Is that correct?

MR. JOHNSON: Yes, Your Honor. The written plea offer from the government called for pleading to Counts 1 and 2 as well. And so in discussion with

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

Mr. Holliday, we rejected that offer.

THE COURT: Do you recall that, Mr. Holliday, that there may have been a plea offer or even an extension of one that was offered to you and your attorney to consider and together you considered it and decided that you'd reject that and go ahead and plead without an agreement today? Do you recall that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you understand today that you don't have an agreement with the government about anything in your case, for example, what the sentence might be or anything like that. Do you understand that?

THE DEFENDANT: That does -- does that include like . . .

THE COURT: Why don't you visit with Mr. Johnson about that.

THE DEFENDANT: Okay. Then yes, Your Honor.

THE COURT: Okay. And you did have a minute to visit with Mr. Johnson, and I really don't want you to tell me what the two of you might have discussed. But did -- was he able to answer your questions you might have had about, you know, the consequences of going forward without a plea agreement today?

THE DEFENDANT: Yes, yes, Your Honor.

THE COURT: And you seem a little doubtful. If

you want to visit with Mr. Johnson more about that before we go forward, you can.

THE DEFENDANT: Okay.

THE COURT: You ready to go forward, Mr. Holliday?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And if you do want to stop and ask me or preferably Mr. Johnson any questions, again, we'll make time for you to do that.

Mr. Edwards, did I accurately describe the elements of the charges?

MR. EDWARDS: Yes, Your Honor.

THE COURT: Have I established an adequate factual basis for the guilty plea?

MR. EDWARDS: Yes, Your Honor.

THE COURT: Mr. Johnson, do you think that Mr. Holliday understands the elements of the charges against him?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Have I established an adequate factual basis for the pleas?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Have you had full access to the government's discovery materials?

MR. JOHNSON: I have.

THE COURT: Do you believe they support a factual basis for Mr. Holliday's guilty pleas?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Do you know of any possible defense to these charges which you have not considered and discussed with him?

MR. JOHNSON: No, Your Honor.

THE COURT: At this point, Mr. Holliday, I'd like to visit with you about the penalties that apply in this case. Count 1 is punishable by a mandatory minimum sentence of 5 years' imprisonment and the following maximum penalties: First, not more than 40 years' imprisonment without the possibility of parole; second, a fine of not more than 5 million dollars; third, a mandatory special assessment of $100; and, fourth, a term of supervised release of at least 4 years, and it could be for the rest of your life.

Count 2 is punishable by the following maximum penalties: First, not more than 20 years' imprisonment without the possibility of parole; second, a fine of not more than $500,000; third, a mandatory special assessment of $100; and, fourth, a term of supervised release of not more than 3 years.

Now, because there are two counts here, the sentences could be run consecutively for a maximum

sentence of 60 years' imprisonment, a fine of $5,500,000, $200 in special assessments, and up to a lifetime of supervised release.

And I assume that most people understand the difference between sentences running consecutively and concurrently. And I don't mean to insult your intelligence by explaining it here. But I think it's safer just to do that.

But if sentences are run consecutively, that means they run one right after the other, so you're in prison longer than if they're run concurrently which means they start at the same time. So in theory you're out after the longer of those two sentences have run. Do you understand that?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: And do you understand the maximum and minimum penalties which may be imposed in your case?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: At the time of your sentencing, the judge will perform a calculation under the federal sentencing guidelines that are issued by the United States Sentencing Commission, and that calculation will result in what's called an advisory guideline range. Now, that's just a range of months within which the commission suggests that the judge should sentence you

based on your crime and your background. The judge has to consider the advisory range in determining your sentence, but the judge is not required to sentence you within that range. That means the judge could give you more time or less time by departing upward or downward from that advisory range based on the factors listed in the sentencing guidelines and the sentencing statutes.

So it's important for you to understand, Mr. Holliday, that the sentence ultimately imposed by the judge in this case could be different from what those guidelines suggest that it should be, and it could be different from what Mr. Johnson may have estimated or predicted that you would receive, and it could be all the way up to the statutory maximum sentence which we just discussed in your case is 40 years on Count 1 and 20 years on Count 2. And if they're run consecutively, it could be up to 60 years in prison without the possibility of parole. Do you understand all of that?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: You should also understand that how ever the guideline range is calculated and regardless of whether the judge departs or varies from the guidelines, the judge cannot sentence you below five years' imprisonment because under the statute that's the mandatory minimum even if the judge would like to give

you less time. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: You should understand that you will be in custody for all of any prison sentence you receive reduced only by any credit you might earn for good behavior while you're in prison. You can earn some percentage off your sentence for good behavior, but you won't be seeing a parole board or be paroled early out of prison because there is no parole in the federal court system. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Are you a U.S. citizen?

THE DEFENDANT: Yes, Your Honor.

THE COURT: This is a felony offense, so as a result of your conviction, you will lose the right to vote, to hold public office, to serve on a jury, and to possess firearms and ammunition. Do you understand the loss of citizenship rights associated with a felony conviction?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Now, I mentioned that after you've served your prison sentence you'll be placed on supervised release, and in this case it could be for the rest of your life. And during that time your conduct will be monitored by a United States probation officer.

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

At the time of sentencing, the judge will impose certain conditions on your supervised release. There are some standard conditions that apply in every case, things like you can't commit a federal, state, or a local crime, and you can't possess or use controlled substances. The judge will likely impose some other conditions on you as well.

So it's important for you to understand, Mr. Holliday, while you're on supervised release, you'll have to comply with all of the terms of that supervised release because if you violate any of them, the judge could revoke that supervised release and send you back to prison for all of the time you'd otherwise be on supervised release, and the judge doesn't have to give you credit for time that you might have served on supervised release without having any violations. Do you understand all that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Mr. Edwards, are you aware of other collateral consequences that could arise as a result of Mr. Holliday's guilty plea that you would like me to discuss with him?

MR. EDWARDS: No, Your Honor.

THE COURT: Mr. Holliday, if you plead guilty today, I'll order a presentence investigation. A

probation officer will conduct a thorough investigation of this case and your background to draft a presentence investigation report. It's my understanding that might take about 70 days, and that could be a bit of a quiet period during your case. But you shouldn't worry that the probation office has forgotten about it. It just takes a while to get it put together.

When you get a copy of that report, it's important that you go over it carefully with Mr. Johnson and that you point out any errors or omissions you might see so that he can bring those to the attention of the probation office and get them corrected because when it comes time for your sentencing, the judge will rely heavily on that report to determine the most appropriate sentence for you. So it's really in your interest to help make it accurate.

When that report's final, the court will schedule your sentencing hearing, and at that hearing both you and the government can present evidence, and you'll be given a chance to talk directly to the judge, and you can tell the judge anything you think is important to consider in determining your sentence. Do you have any questions about the sentencing procedures that would follow a guilty plea in this case?

THE DEFENDANT: No, I don't, Your Honor.

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

THE COURT: Both you and the government have the right to appeal the sentence to the Eighth Circuit Court of Appeals. Do you have any questions regarding your right to appeal?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Holliday, if you plead guilty today and the district court judge then later accepts that guilty plea, you'll have no right to withdraw it later even if you change your mind or even if you're unhappy with the sentence ultimately imposed by the judge. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Has anyone forced, pressured, or threatened you in any way to get you to plead guilty or made any promises to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Johnson, do you believe a guilty plea in this case would be voluntary?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Do you know of any legal reason why the plea should not be accepted?

MR. JOHNSON: No, Your Honor.

THE COURT: Do you know of anything the Court has omitted which could affect the validity of the plea?

MR. JOHNSON: No, Your Honor.

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

THE COURT: Mr. Edwards, do you know of anything the Court has omitted which could affect the validity of the plea?

MR. EDWARDS: No, Your Honor.

THE COURT: Well, Mr. Holliday, I know we've covered a lot of information here this afternoon, and I do want to take just a minute to be sure that you understood it all so you don't come back next week or next month or next year and say that you didn't understand something or that somebody forced or pressured you to plead guilty. Have you been able to understand everything we've talked about?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: Do you have any questions about any of it?

THE DEFENDANT: No, I don't, Your Honor.

THE COURT: Has anyone forced or pressured you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Is your decision to plead guilty a voluntary decision?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then formally and for the record, how do you plead to Count 1 of the indictment which charges you with the crime of conspiracy to distribute a

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

controlled substance? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead to Count 2 of the indictment which charges you with the crime of conspiracy to commit money laundering? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: The record will reflect that the defendant has pleaded guilty to Counts 1 and 2 of the indictment.

I find that the defendant is competent, he fully understands the charges against him, there's a factual basis for his pleas, he knows the minimum and maximum punishments that could be imposed on the charges, and he knows his jury rights and he has voluntarily waived those rights.

I further find that the defendant's decision to plead guilty was voluntary, knowing, and not the result of any force, pressure, threats, or promises.

Therefore, I conclude the defendant should be found guilty based on his pleas of guilty.

I will sign and file a report and recommendation recommending that the district court judge accept the defendant's guilty pleas. The parties will have 14 days from the filing of that report to file objections to it.

If no objection is made, then the district court judge may accept my recommendation and the defendant's guilty plea by simply entering a written order doing so.

I hereby order a presentence investigation, and the court will schedule a sentencing hearing in this case for a later date.

It's my understanding that the government is now moving for Mr. Holliday's detention. And because this is post-plea and -- therefore, I believe the burden has shifted to the defense to establish he's not a risk of nonappearance or a risk of flight and also, because it's a mandatory detention, that there are exceptional reasons to justify his release at this point. And I understand you would like to be addressed on that issue -- or you'd like to address the issue anyway, Mr. Johnson?

MR. JOHNSON: That is correct, Your Honor.

THE COURT: Please proceed.

MR. JOHNSON: Your Honor, first to address the elements or the factors under 3143, with regards to Mr. Holliday as a danger to the community, he's been on pretrial release for -- for several months now. He hasn't had any new law violations as indicated by the letters that we filed at document 31 in this matter and obviously would like the Court to take those into account as well.

He's engaged in counselling as being directed with the Court. His criminal history is non -- nonviolent. He is a person who voluntarily removed himself, for lack of a better term, from a criminal lifestyle, has moved to Arizona. And, frankly, more importantly, his -- the birth of his daughter in February of 2022 was kind of a turning point for Mr. Holliday as far as being committed to being a responsible adult and to go from there.

As reflected in the -- in some of the letters that were filed as well, Mr. Holliday had a difficult upbringing. He had a difficult home life, was eventually removed and grew up with relatives, specifically Miss Langhurst as she indicated in her letter, his aunt.

He's not only in counselling, but he's not just checking off boxes. He is taking it seriously as indicated by that letter.

Regarding his risk of flight, Mr. Holliday is -- is a resident of Arizona, but he has come up here for two different court hearings. He has religiously called me, I believe, every single Friday since he's been released at noon to check in to make sure that there aren't any issues there. He's checked in with the appropriate people down in -- down in that district that's been supervising him. He has not had any issues with that whatsoever.

And so I believe that his past conduct, frankly, has met the burden for release pending sentencing under 31 -- 18 U.S.C. 3143.

Agree with the Court that this is a mandatory revoca -- or mandatory detention, however, so with the factors at 18 U.S.C. 3145 needing to be exceptional reasons, obviously the -- everything that was put forth by myself previously is compelling reasons, frankly, to allow for Mr. Holliday to remain released.

Specifically with regards to exceptional reasons or those reasons that would be somewhat outside the norm or kind of above the -- above the typical as somewhat set out, one, Mr. Holliday as he indicated to the Court very early on in this proceeding, he has enrolled in college. He is a full-time student. He's a stay-at-home dad in taking care of his young daughter who will turn two in February.

He also has actually an older sister in Arizona that he provides care for, kind of the support system. His older sister is currently actually under a mental health committal down in Arizona, but he is the support system that exists down there. She has had seven or eight mental health committals in her lifetime, and she's been diagnosed as -- with paranoid schizophrenia as well as bipolar disorder type II.

I believe that those are kind of those extraordinary reasons that are set forth under the code that are above the norm, that are above just the standard, you know, reasons that somebody should be released.

Additionally, obviously would rely on the letters that were filed as well. It is my understanding as well that Mr. Holliday wishes to address the Court as well, Your Honor. He's prepared a written statement.

THE COURT: Before we get to that, it's not often at these hearings that we have just statements from the defendant like you have a right to make at the time of your -- your sentencing, Mr. Holliday.

Mr. Edwards, do you have any objection to the defendant making a statement not under oath and not subject to cross-examination at this point?

MR. EDWARDS: Your Honor, given the nature of the proceedings, I think the government would have an objection to that.

THE COURT: Well, Mr. Johnson, can you tell me before I decide that the general subject matter? If he's going to go on about, you know, the underlying offense and who did what and why he shouldn't be guilty of it, not necessarily that, but things that have to do with the offense, if he's going to talk about perhaps just the reasons why he thinks there's exceptional reasons to keep

him on release, I'd be more tempted to make him -- allow him to make a statement like an allocution. Do you want to visit with him about it?

MR. JOHNSON: Your Honor, I've reviewed the statement that he prepared. He came into my office before coming over here today. It is very much the latter. There is not anything that has to do with the underlying offense here.

THE COURT: Okay. Mr. Edwards, if you'll let me know if you think we're getting into the type of situation where you think it might be appropriate for the government to have cross-examination, let me know. But I am inclined to let Mr. Holliday talk to me about the exceptional circumstances without placing him under oath or without subjecting him to cross-examination.

MR. EDWARDS: And that's fine. I think that Your Honor's initial concerns were the government's concerns as well.

THE COURT: All right. So you understand that, Mr. Holliday? I'm happy to hear of reasons that's exceptional circumstances that you should be released. But if you're going to explain or justify or talk about the underlying offenses that led you here, then the government's probably going to ask you questions about that. But you can proceed if you understand that.

THE DEFENDANT: I understand, Your Honor.

THE COURT: Very good.

THE DEFENDANT: So in regards to the letter I wrote, I wrote it along with the other letters that were given to you. I wrote, Your Honor, I hope this letter finds you in good health and spirits. I am writing to respectfully request your consideration for presenten -- presentencing -- presentencing release like probation rather than incarceration in my case. I deeply appreciate the responsibility you hold in ensuring justice. I'm committed to making amends and becoming a more responsible member of society and also demonstrating positive change in my life.

Since the incident, significant transformations have taken place. The birth of my child and previous move from Iowa to Arizona has brought new pr -- a newfound respect -- perspective and responsibility. The love and responsibility of parenthood have been profound motivators to make better decisions and create a stable environment for my family.

I must also share that my -- my past is marked with challenging and -- and traumatizing upbringing in which my sister had the same challenging and traumatizing upbringing which is why she ended up becoming a bipolar schizophrenic.

And I was able to, like, not have any disorders or mental -- mental issues myself, but we had a very traumatizing upbringing. I did have -- so I fell victim to some negative influences upon arriving to Arizona which contributed to poor decision making. However, I'm actively seeking therapy and counselling to address the impact of my past and develop healthier coping mechanisms.

I do understand the gravity of my actions, and I take full responsibility for the consequences. My primary concern is to be present for my fiancée and my child and also for my sister who will be getting released from -- she's institutionalized right now per a petition that we did to the court down in Arizona because she got off her meds, and she got into some legal trouble because she was off her meds, and she was out wandering, and she was found wandering and had a incident with the police because she was no longer taking her medications.

And I would just want to provide love and support for them, and incarceration would not only separate me from all of them, but it would hinder my ability to fulfill my responsibilities as a parent, as a brother, and as a husband and also as a student in school. I am committed to rehabilitation, recognize the need for accountability.

With this in mind, I am open to any conditions the Court deems necessary for me to be on presentencing release. I am currently participating in Mountain Valley Counselling, and I am a student at Rio Salado College which have been very instrumental in my journey toward personal growth and self-improvement.

I kindly request your understanding and consideration to my release as an opportunity for me to continue making positive changes in my life and being there for the people in my life that need me.

And I also assure you that the support of my family combined with the structure of a probation and pretrial release will be instrumental in my rehabilitation. I am determined to break the cycle of negative influences and trauma in my life and create a safe, nurturing environment for my family.

I want to just thank you for your time and consideration letting me read this letter. And I'm prepared to abide by any conditions that you would deem necessary for me to be released. And I would work diligently to rebuild my life and contribute positively to society, and I am eager to prove that I am on a path of positive change. Thank you, Your Honor.

THE COURT: Thank you, Mr. Holliday.

Anything else from the defense at this point,

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

Mr. Johnson?

MR. JOHNSON: No, Your Honor.

THE COURT: All right then.

Mr. Edwards, would you like to address the issue?

MR. EDWARDS: Your Honor, I just -- the Court's well aware of the Eighth Circuit law on this topic. I would just submit that either singularly or in combination these circumstances don't amount to exceptional circumstances as defined by the Eighth Circuit. Thanks.

THE COURT: Thank you, Mr. Edwards.

Mr. Holliday, I want to commend you for how well you did on pretrial release. I haven't heard any complaints about things. I'm glad to hear you've been keeping in touch with Mr. Johnson, that you've made it here for hearings, that you haven't had any new law violations, anything like that.

Beyond that, the work that you've done on yourself and with your family, I commend that wholeheartedly. I don't always see that from people who are either on pretrial release or even people who are postconviction. So how ever this comes out, I hope you -- I hope you take the lessons that you've learned during this time before your sentencing to heart going forward. It does seem like you've learned a lot from this and you have a lot

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*to purchase a complete copy of the transcript.*

going for you.

I did read the letters from your family. It's gotta be very heartening to have people like your aunt and your sister, certainly your counsel behind you and your fiancée knowing that they've -- they're supporting you in this.

As I mentioned when we were going through the discussion about your guilty plea, you have a right to appeal decisions to the Eighth Circuit Court of Appeals, and Mr. Johnson and Mr. Edwards and I have been talking about the Eighth Circuit Court of Appeals somewhat. That's the appeals court for the place that we're located in. And they are the ones who have issued some rulings about what this exceptional circumstances mean.

So even if I don't believe you're not a risk of nonappearance or I also believe you're not a danger to the community -- you've shown that on pretrial release -- I don't think you're in exceptional circumstances. And that doesn't mean that I'm not empathetic or even laudatory about what you've done since your release.

But everybody ultimately who -- or most everybody who's convicted of a crime, they leave their family members in a bit of a lurch when they go to prison. There is never a good time to go in. And the Eighth Circuit and Congress has said there has to be exceptional

circumstances. And as laudatory as your efforts to reform during the last few months, get counselling, take care of your family responsibilities, and turn your life around have been, that doesn't constitute under the law as I see it exceptional circumstances that merit your release pending sentencing.

So I am going to order that the defendant be committed to the custody of the attorney general until sentencing in this matter.

Now, Mr. Holliday, you don't have to agree with my decision. In fact, you have a right to appeal my decision to the district court judge who's assigned to your case. Mr. Johnson knows how to do that. And if the two of you discuss that and you want to do it, he can certainly do that on your behalf. Do you understand your right to appeal my decision?

THE DEFENDANT: I do understand.

THE COURT: And do you have any questions about anything we've discussed here today?

THE DEFENDANT: About the exceptional circumstance, I was just curious if my sister who I'm the primary support, the fact that she has, like, tried to commit suicide and stuff like that, clarify that being exceptional circumstance, her having a support system because she gets out in a few weeks. She'll be released

in four or five weeks, and I'm her only family that's in Arizona to support her and make sure she stays on her meds so that she stays alive and well.

THE COURT: I do wish that part of the record had been fleshed out a little bit. I'm supposed to say that in nonlawyer language. I wish I knew more of the facts about that. But I can also appreciate that it might be difficult for someone in your position to get documents about the mental health condition of someone else.

So I'm not -- I'm not saying that that's not true or that's not happening, that you're not about to have responsibilities toward her. But two things: One, I'm not sure that the record establishes that that's her only source of someone to take care of her. But also even if it was, I don't think that constitutes exceptional circumstances. And the Eighth Circuit has been very limited on what they've called exceptional circumstances. So I appreciate you bringing that up again. I'm glad I talked about it more, but it doesn't change my decision.

THE DEFENDANT: Okay. I understand, Your Honor.

THE COURT: Is there anything further on behalf of the United States?

MR. EDWARDS: No, Your Honor.

THE COURT: Mr. Johnson, anything else on behalf of Mr. Holliday?

MR. JOHNSON: Not today, Your Honor. Thank you.

THE COURT: All right. Thank you all. That will conclude our hearing.

(The foregoing plea was concluded at 3:13 p.m.)

* * * *

(This concludes the transcript of the audio recording.)

CERTIFICATE

I certify that the foregoing is a correct transcript to the best of my ability from the digital recording of proceedings in the above-entitled matter.

S/Shelly Semmler 1-12-24
Shelly Semmler, RDR, CRR Date

## $

**$100** [2] - 17:15, 17:22
**$200** [1] - 18:2
**$5,500,000** [1] - 18:1
**$500,000** [1] - 17:21

## '

**'21** [1] - 10:9

## 1

**1** [9] - 2:12, 2:24, 9:25, 10:7, 14:25, 17:10, 19:15, 24:24, 25:9
**1-12-24** [1] - 38:24
**111** [2] - 1:10, 1:14
**12** [2] - 7:2, 7:10
**14** [1] - 25:24
**18** [2] - 28:3, 28:6

## 2

**2** [14] - 2:14, 2:24, 10:9, 10:16, 12:3, 12:8, 12:11, 13:2, 14:2, 14:25, 17:18, 19:16, 25:3, 25:9
**20** [2] - 17:19, 19:15
**2021** [7] - 10:8, 10:15, 10:16, 12:10, 13:1, 13:2
**2022** [1] - 27:6
**2023** [1] - 1:11
**21** [4] - 10:8, 10:15, 12:10, 13:2
**222** [1] - 1:17
**23-CR-21** [1] - 2:7
**233-3846** [1] - 1:20
**28** [2] - 1:11, 4:17
**29** [1] - 3:11
**2:28** [1] - 1:11

## 3

**3** [1] - 17:23
**30** [2] - 12:9, 13:1
**31** [2] - 26:23, 28:2
**3143** [2] - 26:19, 28:3
**3145** [1] - 28:6
**320** [1] - 1:19
**3:13** [1] - 38:8

## 4

**4** [2] - 9:25, 17:16
**40** [4] - 11:19, 11:25, 17:12, 19:15

## 5

**5** [2] - 17:11, 17:14
**501** [1] - 1:17
**51101** [1] - 1:20
**52401** [2] - 1:15, 1:18

## 6

**60** [2] - 18:1, 19:17

## 7

**70** [1] - 22:4
**712** [1] - 1:20

## A

**abide** [1] - 33:19
**ability** [3] - 5:6, 32:21, 38:22
**able** [3] - 15:21, 24:11, 32:1
**above-entitled** [1] - 38:23
**abused** [1] - 5:3
**accept** [3] - 9:21, 25:23, 26:2
**accepted** [1] - 23:21
**accepts** [1] - 23:7
**access** [1] - 16:23
**account** [2] - 9:9, 26:24
**accountability** [1] - 32:25
**accurate** [1] - 22:16
**accurately** [1] - 16:10
**actions** [1] - 32:9
**actively** [1] - 32:6
**activities** [1] - 13:12
**activity** [3] - 12:16, 12:21, 13:7
**additionally** [1] - 29:5
**address** [5] - 26:15, 26:18, 29:7, 32:6, 34:4
**addressed** [1] - 26:14
**adequate** [2] - 16:13, 16:20
**administer** [1] - 3:19
**admitted** [1] - 7:7
**adult** [1] - 27:8
**advisory** [3] - 18:23, 19:2, 19:6
**affect** [3] - 5:6, 23:24, 24:2
**affecting** [2] - 12:14, 13:5
**afford** [1] - 8:20
**afternoon** [2] - 2:25, 24:6
**agree** [3] - 7:11, 28:4, 36:10
**agreeable** [1] - 3:7
**agreement** [23] - 10:10, 10:17, 10:22, 11:3, 11:8, 11:9, 11:14, 11:15, 11:18, 11:24, 12:12, 13:3, 13:17, 13:23, 14:4, 14:5, 14:10, 14:11, 14:21, 14:22, 15:7, 15:10, 15:23
**ahead** [1] - 15:6
**alcohol** [2] - 5:3, 5:6
**alive** [1] - 37:3
**allocution** [1] - 30:2
**allow** [2] - 28:9, 30:1
**alone** [1] - 7:22
**amends** [1] - 31:11
**AMERICA** [1] - 1:3
**ammunition** [1] - 20:17
**amount** [3] - 11:20, 12:1, 34:8
**answer** [2] - 4:4, 15:21
**answers** [1] - 3:16
**anxiety** [1] - 4:25
**anyway** [1] - 26:15
**appeal** [5] - 23:2, 23:4, 35:9, 36:11, 36:16
**appeals** [1] - 35:12
**Appeals** [3] - 23:3, 35:9, 35:11
**APPEARANCES** [1] - 1:12
**apply** [2] - 17:9, 21:3
**appointed** [2] - 6:13, 6:16
**appreciate** [3] - 31:10, 37:7, 37:19
**appropriate** [3] - 22:14, 27:22, 30:11
**April** [2] - 10:8, 10:15
**arise** [1] - 21:20
**Arizona** [8] - 27:5, 27:18, 28:18, 28:21, 31:16, 32:4, 32:14, 37:2
**arriving** [2] - 9:11, 32:4
**assessment** [2] - 17:15, 17:21
**assessments** [1] - 18:2
**assigned** [2] - 3:3, 36:12
**Assistant** [2] - 1:14, 2:8
**associated** [1] - 20:18
**assume** [1] - 18:4
**assure** [1] - 33:11
**attempt** [2] - 12:13, 13:4
**attention** [1] - 22:11
**attorney** [4] - 2:9, 6:21, 15:5, 36:8
**Attorney** [2] - 1:14, 2:8
**audio** [2] - 2:1, 38:10
**August** [2] - 12:9, 13:1
**aunt** [2] - 27:13, 35:3
**Avenue** [3] - 1:10, 1:14, 1:17
**aware** [2] - 21:19, 34:6

## B

**background** [2] - 19:1, 22:2
**based** [6] - 7:6, 7:7, 9:15, 19:1, 19:6, 25:21
**basis** [4] - 16:14, 16:21, 17:2, 25:13
**becoming** [2] - 31:11, 31:24
**behalf** [3] - 36:15, 37:23, 38:2
**behavior** [2] - 20:6, 20:7
**behind** [1] - 35:4
**below** [1] - 19:23
**best** [1] - 38:22
**better** [2] - 27:4, 31:19
**between** [3] - 10:7, 10:14, 18:5
**beyond** [5] - 7:20, 10:1, 12:5, 14:3, 34:18
**bipolar** [2] - 28:25, 31:24
**birth** [2] - 27:6, 31:15
**bit** [3] - 22:4, 35:23, 37:5
**board** [1] - 20:8
**boxes** [1] - 27:15
**break** [1] - 33:14
**Brian** [1] - 2:9
**BRIAN** [1] - 1:16
**bring** [1] - 22:11
**bringing** [1] - 37:19
**brother** [1] - 32:22
**brought** [1] - 31:16
**burden** [3] - 8:15, 26:9, 28:2

## C

**calculated** [1] - 19:21
**calculation** [2] - 18:20, 18:22
**cannot** [1] - 19:23
**care** [4] - 28:16, 28:19, 36:3, 37:15
**carefully** [1] - 22:9
**case** [24] - 2:5, 3:3, 6:12, 6:14, 6:16, 7:6, 7:16, 8:2, 8:14, 8:16, 15:11, 17:10, 18:17, 19:10, 19:15, 20:23, 21:3, 22:2, 22:5, 22:24, 23:18, 26:5, 31:9, 36:13
**CEDAR** [1] - 1:2
**Cedar** [3] - 1:10, 1:15, 1:18
**certain** [1] - 21:2
**certainly** [2] - 35:4, 36:15
**CERTIFICATE** [1] - 38:20
**certify** [1] - 38:21
**challenge** [1] - 8:7
**challenging** [2] - 31:22, 31:23
**chance** [1] - 22:20
**change** [5] - 2:10, 23:9, 31:13, 33:23, 37:20
**changed** [1] - 14:18
**changes** [1] - 33:9
**charge** [3] - 3:23, 4:7, 12:4
**charged** [3] - 2:11, 9:22, 9:24
**charges** [14] - 2:12, 2:14, 2:21, 6:18, 7:18, 8:11, 9:1, 16:11, 16:17, 17:5, 24:25, 25:4, 25:12, 25:14
**check** [1] - 27:21
**checked** [1] - 27:22
**checking** [1] - 27:15
**child** [2] - 31:15, 32:12
**chose** [1] - 9:6
**Circuit** [7] - 23:2, 34:6, 34:10, 35:9, 35:11, 35:25, 37:17
**circumstance** [2] - 36:21, 36:24
**circumstances** [10] - 30:14, 30:21, 34:8, 34:9, 35:14, 35:18, 36:1, 36:5, 37:17, 37:18
**citizen** [1] - 20:12
**citizenship** [1] - 20:18
**City** [1] - 1:20

**clarify** [1] - 36:23
**code** [1] - 29:2
**collateral** [1] - 21:20
**college** [2] - 4:20, 28:14
**College** [1] - 33:4
**combination** [1] - 34:8
**combined** [1] - 33:12
**comfortable** [1] - 2:18
**coming** [1] - 30:6
**commencing** [1] - 1:11
**commend** [2] - 34:12, 34:19
**commerce** [2] - 12:14, 13:5
**Commission** [1] - 18:22
**commission** [1] - 18:25
**commit** [4] - 2:14, 21:4, 25:5, 36:23
**committal** [1] - 28:21
**committals** [1] - 28:23
**committed** [4] - 27:7, 31:11, 32:24, 36:8
**community** [3] - 7:3, 26:20, 35:17
**compelling** [1] - 28:8
**competent** [2] - 6:1, 25:11
**complaints** [1] - 34:13
**comply** [1] - 21:10
**conceal** [2] - 12:19, 13:10
**concern** [1] - 32:11
**concerns** [2] - 30:17, 30:18
**conclude** [2] - 25:20, 38:6
**concluded** [1] - 38:8
**concludes** [1] - 38:10
**concurrently** [2] - 18:6, 18:11
**condition** [2] - 5:10, 37:9
**conditions** [5] - 21:2, 21:3, 21:6, 33:1, 33:19
**conduct** [7] - 12:13, 13:4, 20:24, 22:1, 28:1
**confront** [2] - 8:6, 8:10
**confrontation** [1] - 8:2
**Congress** [1] - 35:25
**consecutively** [4] - 17:25, 18:5, 18:9, 19:16
**consent** [3] - 3:7, 3:12, 3:14
**consequences** [3] - 15:22, 21:20, 32:10
**consider** [3] - 15:5, 19:2, 22:21
**consideration** [3] - 31:7, 33:8, 33:18
**considered** [2] - 15:5, 17:5
**conspiracy** [5] - 2:13, 2:14, 9:23, 24:25, 25:5
**constitute** [1] - 36:4
**constitutes** [1] - 37:16
**containing** [2] - 11:20, 12:1
**continue** [2] - 6:18, 33:9
**continuing** [4] - 10:8, 10:15, 12:10, 13:1
**contribute** [1] - 33:21
**contributed** [1] - 32:5
**control** [2] - 12:20, 13:11
**controlled** [6] - 2:13, 9:24, 12:18, 13:9, 21:5, 25:1
**convicted** [2] - 3:25, 35:22
**conviction** [2] - 20:15, 20:19
**coping** [1] - 32:7
**copy** [2] - 2:15, 22:8
**correct** [4] - 2:25, 14:22, 26:16, 38:21
**corrected** [1] - 22:12
**counsel** [1] - 35:4
**counselling** [4] - 27:1, 27:14, 32:6, 36:2
**Counselling** [1] - 33:4
**Count** [13] - 2:12, 2:14, 9:24, 10:7, 12:3, 12:8, 14:2, 17:10, 17:18, 19:15, 19:16, 24:24, 25:3
**Counts** [3] - 2:24, 14:25, 25:9
**counts** [2] - 2:12, 17:24
**course** [1] - 6:5
**COURT** [97] - 1:1, 2:5, 2:17, 2:20, 2:23, 3:2, 3:10, 3:21, 4:4, 4:10, 4:16, 4:18, 4:21, 4:24, 5:2, 5:5, 5:9, 5:12, 5:16, 5:21, 6:3, 6:10, 6:16, 6:23, 7:1, 7:15, 8:1, 8:13, 9:3, 9:13, 9:20, 10:14, 10:20, 11:2, 11:7, 11:13, 11:17, 11:24, 12:3, 12:25, 13:15, 13:22, 14:2, 14:9, 14:13, 14:19, 15:2, 15:9, 15:15, 15:18, 15:25, 16:4, 16:7, 16:13, 16:16, 16:20, 16:23, 17:1, 17:4, 17:8, 18:16, 18:19, 19:20, 20:3, 20:12, 20:14, 20:21, 21:19, 21:24, 23:1, 23:6, 23:13, 23:17, 23:20, 23:23, 24:1, 24:5, 24:14, 24:17, 24:20, 24:23, 25:3, 25:8, 26:17, 29:9, 29:19, 30:9, 30:19, 31:2, 33:24, 34:3, 34:11, 36:18, 37:4, 37:23, 38:1, 38:5
**court** [13] - 3:5, 8:4, 9:21, 20:9, 22:17, 23:7, 25:23, 26:1, 26:5, 27:19, 32:14, 35:12, 36:12
**Court** [15] - 1:10, 2:6, 3:4, 6:16, 23:3, 23:23, 24:2, 26:24, 27:2, 28:4, 28:13, 29:7, 33:2, 35:9, 35:11
**Court's** [2] - 3:11, 34:5
**Courthouse** [1] - 1:10
**courthouse** [1] - 8:22
**covered** [1] - 24:6
**CR23-0021-CJW** [1] - 1:5
**create** [2] - 31:19, 33:15
**credit** [2] - 20:5, 21:15
**crime** [6] - 2:12, 19:1, 21:4, 24:25, 25:4, 35:22
**crimes** [1] - 3:24
**criminal** [3] - 8:14, 27:2, 27:4
**cross** [5] - 7:3, 8:8, 29:15, 30:12, 30:15
**cross-examination** [3] - 29:15, 30:12, 30:15
**cross-examine** [1] - 8:8
**cross-section** [1] - 7:3
**CRR** [2] - 1:19, 38:24
**curious** [1] - 36:21
**custody** [2] - 20:4, 36:8
**cycle** [1] - 33:14

## D

**dad** [1] - 28:15
**danger** [2] - 26:20, 35:16
**Date** [1] - 38:24
**date** [1] - 26:6
**daughter** [2] - 27:6, 28:16
**days** [2] - 22:4, 25:24
**deadlines** [1] - 14:17
**December** [5] - 1:11, 10:8, 10:15, 12:10, 13:1
**decide** [1] - 29:20
**decided** [2] - 14:20, 15:6
**decision** [8] - 24:20, 24:21, 25:17, 32:5, 36:11, 36:12, 36:16, 37:20
**decisions** [2] - 31:19, 35:9
**deem** [1] - 33:19
**deems** [1] - 33:2
**deeply** [1] - 31:9
**defendant** [7] - 2:9, 25:9, 25:11, 25:20, 29:11, 29:14, 36:7
**Defendant** [2] - 1:7, 1:16
**DEFENDANT** [70] - 2:16, 2:19, 2:22, 3:1, 3:9, 3:20, 4:3, 4:9, 4:15, 4:17, 4:19, 4:23, 5:1, 5:4, 5:8, 5:11, 5:15, 5:20, 6:9, 6:22, 6:25, 7:13, 7:25, 8:12, 9:2, 9:12, 9:19, 10:13, 10:19, 11:1, 11:6, 11:12, 11:16, 11:23, 12:2, 12:24, 13:14, 13:21, 14:1, 14:8, 14:12, 15:8, 15:13, 15:17, 15:24, 16:3, 16:6, 18:15, 18:18, 19:19, 20:2, 20:11, 20:13, 20:20, 21:18, 22:25, 23:5, 23:12, 23:16, 24:13, 24:16, 24:19, 24:22, 25:2, 25:7, 31:1, 31:3, 36:17, 36:20, 37:21
**defendant's** [3] - 25:17, 25:24, 26:2
**defense** [6] - 8:14, 8:18, 9:1, 17:4, 26:10, 33:25
**defined** [1] - 34:9
**deliberated** [1] - 9:16
**demonstrating** [1] - 31:12
**departing** [1] - 19:5
**departs** [1] - 19:22
**depression** [1] - 4:25
**describe** [1] - 16:10
**designed** [2] - 12:19, 13:10
**desire** [1] - 4:11
**detail** [1] - 2:21
**detectable** [2] - 11:20, 12:1
**detention** [3] - 26:8, 26:12, 28:5
**determine** [1] - 22:14
**determined** [1] - 33:14
**determining** [2] - 19:2, 22:22
**develop** [1] - 32:7
**diagnosed** [1] - 28:24
**difference** [1] - 18:5
**different** [3] - 19:10, 19:12, 27:19
**difficult** [3] - 27:10, 27:11, 37:8
**difficulty** [2] - 4:21, 5:13
**digital** [2] - 1:19, 38:22
**diligently** [1] - 33:21
**DILLAN** [1] - 1:13
**Dillan** [1] - 2:8
**directed** [1] - 27:1
**directly** [1] - 22:20
**discovery** [1] - 16:24
**discuss** [4] - 2:21, 9:9, 21:22, 36:14
**discussed** [4] - 15:20, 17:6, 19:15, 36:19
**discussion** [2] - 14:25, 35:8
**disguise** [2] - 12:19, 13:10
**disorder** [1] - 28:25
**disorders** [1] - 32:1
**distribute** [7] - 2:13, 9:24, 10:11, 10:18, 12:17, 13:8, 24:25
**distributing** [2] - 12:17, 13:8
**DISTRICT** [2] - 1:1, 1:1
**district** [7] - 3:5, 9:21, 23:7, 25:23, 26:1, 27:23, 36:12
**District** [7] - 1:10, 3:4, 10:9, 10:16, 12:11, 13:2
**DIVISION** [1] - 1:2
**document** [2] - 3:11,

26:23
**documents** [1] - 37:9
**dollars** [1] - 17:14
**Dominique** [2] - 2:6, 4:15
**DOMINIQUE** [2] - 1:6, 3:20
**done** [2] - 34:18, 35:20
**doubt** [4] - 7:21, 10:1, 12:5, 14:3
**doubtful** [1] - 15:25
**down** [5] - 27:23, 28:21, 28:22, 32:14
**downward** [1] - 19:5
**draft** [1] - 22:2
**drug** [1] - 5:5
**drugs** [2] - 5:2, 5:10
**during** [5] - 6:11, 20:24, 22:5, 34:23, 36:2

## E

**eager** [1] - 33:22
**early** [2] - 20:8, 28:14
**earn** [2] - 20:5, 20:6
**EDWARDS** [9] - 1:13, 16:12, 16:15, 21:23, 24:4, 29:16, 30:16, 34:5, 37:25
**Edwards** [9] - 2:8, 16:10, 21:19, 24:1, 29:13, 30:9, 34:4, 34:11, 35:10
**effect** [4] - 10:24, 11:5, 13:19, 13:25
**efforts** [1] - 36:1
**eight** [1] - 28:22
**Eighth** [7] - 23:2, 34:6, 34:9, 35:9, 35:11, 35:24, 37:17
**either** [6] - 10:23, 11:4, 13:17, 13:24, 34:7, 34:20
**elements** [3] - 16:10, 16:17, 26:19
**empathetic** [1] - 35:19
**ended** [1] - 31:24
**engaged** [1] - 27:1
**English** [1] - 4:22
**enrolled** [1] - 28:14
**ensuring** [1] - 31:10
**enter** [2] - 4:13, 6:1
**entering** [1] - 26:3
**entitled** [1] - 38:23
**environment** [2] - 31:20, 33:16
**errors** [1] - 22:10
**ESQ** [2] - 1:13, 1:16
**establish** [1] - 26:10
**established** [2] - 16:13, 16:20
**establishes** [1] - 37:14
**estimated** [1] - 19:12
**eventually** [1] - 27:11
**evidence** [5] - 7:7, 7:20, 8:17, 8:20, 22:19
**examination** [3] - 29:15, 30:12, 30:15
**examine** [1] - 8:8
**example** [2] - 8:19, 15:11
**exceptional** [15] - 26:12, 28:6, 28:10, 29:25, 30:14, 30:21, 34:9, 35:14, 35:18, 35:25, 36:5, 36:20, 36:24, 37:16, 37:18
**exhibits** [1] - 8:20
**exists** [1] - 28:22
**expense** [1] - 6:20
**expenses** [1] - 8:23
**explain** [1] - 30:22
**explaining** [1] - 18:7
**extend** [1] - 14:17
**extension** [1] - 15:4
**extraordinary** [1] - 29:1

## F

**fact** [5] - 7:21, 9:10, 9:22, 36:11, 36:22
**factors** [3] - 19:6, 26:19, 28:6
**facts** [1] - 37:7
**factual** [4] - 16:14, 16:21, 17:2, 25:12
**fairly** [1] - 7:6
**false** [3] - 3:22, 3:24, 4:6
**family** [8] - 31:20, 33:11, 33:16, 34:19, 35:2, 35:22, 36:3, 37:1
**far** [2] - 4:18, 27:7
**February** [2] - 27:6, 28:17
**federal** [3] - 18:20, 20:9, 21:4
**Federal** [1] - 1:10
**fell** [1] - 32:3
**felony** [2] - 20:14, 20:18
**fentanyl** [4] - 10:11, 10:18, 11:20, 12:1
**few** [3] - 4:10, 36:2, 36:25
**fiancée** [2] - 32:11, 35:5
**fight** [1] - 6:18
**file** [3] - 3:11, 25:22, 25:25
**filed** [3] - 26:23, 27:10, 29:6
**filing** [1] - 25:25
**final** [1] - 22:17
**finally** [3] - 8:13, 9:3, 14:2
**financial** [2] - 12:13, 13:4
**fine** [4] - 17:14, 17:20, 18:1, 30:16
**fined** [1] - 4:1
**firearms** [1] - 20:17
**first** [15] - 4:10, 4:19, 6:5, 10:3, 10:6, 10:11, 10:23, 11:4, 12:7, 12:22, 13:18, 13:24, 17:12, 17:19, 26:18
**five** [2] - 19:23, 37:1
**fleshed** [1] - 37:5
**flight** [2] - 26:11, 27:17
**follow** [1] - 22:23
**following** [3] - 2:1, 17:11, 17:18
**FOR** [1] - 1:1
**force** [1] - 25:19
**forced** [3] - 23:13, 24:10, 24:17
**foregoing** [2] - 38:7, 38:21
**foreign** [2] - 12:14, 13:5
**forgotten** [1] - 22:6
**formal** [1] - 14:13
**formally** [1] - 24:23
**forth** [2] - 28:7, 29:2
**forward** [6] - 6:7, 14:21, 15:23, 16:2, 16:4, 34:24
**four** [2] - 10:2, 37:1
**fourth** [4] - 11:17, 11:21, 17:15, 17:22
**frankly** [3] - 27:5, 28:1, 28:8
**Friday** [1] - 27:20
**fulfill** [1] - 32:22
**full** [4] - 4:14, 16:23, 28:15, 32:10
**full-time** [1] - 28:15
**fully** [1] - 25:11

## G

**general** [2] - 29:20, 36:8
**generally** [1] - 6:23
**given** [4] - 7:7, 22:19, 29:16, 31:5
**glad** [2] - 34:14, 37:19
**gotta** [1] - 35:2
**government** [30] - 3:23, 4:6, 7:19, 8:3, 8:15, 8:22, 9:25, 10:6, 10:12, 10:20, 10:25, 11:7, 11:11, 11:17, 11:21, 12:4, 12:7, 12:9, 12:22, 13:15, 13:20, 14:3, 14:7, 14:24, 15:10, 22:19, 23:1, 26:7, 29:17, 30:12
**government's** [4] - 8:6, 16:24, 30:17, 30:24
**grams** [2] - 11:19, 11:25
**gravity** [1] - 32:9
**grew** [1] - 27:12
**growth** [1] - 33:6
**guideline** [2] - 18:23, 19:21
**guidelines** [4] - 18:21, 19:7, 19:11, 19:22
**guilt** [1] - 7:20
**guilty** [42] - 2:24, 3:5, 4:13, 6:1, 6:5, 6:6, 7:23, 8:9, 8:24, 9:14, 9:15, 9:17, 9:21, 9:22, 9:23, 16:14, 17:2, 21:21, 21:24, 22:24, 23:6, 23:8, 23:14, 23:15, 23:18, 24:11, 24:18, 24:20, 25:1, 25:2, 25:5, 25:6, 25:7, 25:9, 25:18, 25:21, 25:24, 26:2, 29:22, 35:8

## H

**hand** [1] - 3:18
**happy** [1] - 30:20
**health** [4] - 28:20, 28:23, 31:6, 37:9
**healthier** [1] - 32:7
**hear** [2] - 30:20, 34:14
**heard** [1] - 34:13
**hearing** [7] - 3:6, 3:8, 3:15, 22:18, 26:5, 38:6
**hearings** [3] - 27:19, 29:10, 34:16
**heart** [1] - 34:24
**heartening** [1] - 35:3
**heavily** [1] - 22:13
**held** [1] - 1:9
**help** [2] - 6:11, 22:15
**hereby** [1] - 26:4
**himself** [1] - 27:3
**hinder** [1] - 32:21
**history** [1] - 27:2
**hold** [2] - 20:16, 31:10
**HOLLIDAY** [2] - 1:6, 3:20
**Holliday** [37] - 2:6, 2:11, 3:13, 3:14, 4:15, 4:16, 6:1, 6:3, 8:9, 8:24, 9:13, 14:14, 14:20, 15:1, 15:2, 16:5, 16:17, 17:8, 19:9, 21:9, 21:24, 23:6, 24:5, 26:20, 27:7, 27:10, 27:17, 28:9, 28:13, 29:7, 29:12, 30:13, 30:20, 33:24, 34:12, 36:10, 38:2
**Holliday's** [3] - 17:2, 21:21, 26:8
**home** [2] - 27:11, 28:15
**Honor** [84] - 2:16, 2:19, 2:22, 3:1, 3:9, 4:3, 4:9, 5:1, 5:4, 5:8, 5:11, 5:15, 5:20, 6:2, 6:9, 6:15, 6:22, 6:25, 7:14, 7:25, 8:12, 9:2, 9:12, 9:19, 10:13, 10:19, 11:1, 11:6, 11:12, 11:16, 11:23, 12:2, 12:24, 13:14, 13:21, 14:1, 14:8, 14:12, 14:15, 14:23, 15:8, 15:17, 15:24, 16:6, 16:12, 16:15, 16:19, 16:22, 17:3, 17:7, 18:15, 18:18, 19:19, 20:2, 20:11, 20:13, 20:20, 21:18, 21:23, 22:25, 23:5, 23:12, 23:16, 23:19, 23:22, 23:25, 24:4, 24:13, 24:16, 24:19, 24:22, 26:16, 26:18, 29:8, 29:16, 30:4, 31:1, 31:5, 33:23, 34:2, 34:5, 37:22, 37:25, 38:3
**Honor's** [1] - 30:17
**Honorable** [1] - 1:9
**hope** [3] - 31:5, 34:22

**hurry** [1] - 5:21
**husband** [1] - 32:23

## I

**IA** [3] - 1:15, 1:18, 1:20
**II** [1] - 28:25
**illegal** [1] - 5:2
**illness** [1] - 4:25
**impact** [1] - 32:7
**important** [6] - 4:4, 5:16, 19:8, 21:8, 22:8, 22:21
**importantly** [1] - 27:5
**impose** [2] - 21:1, 21:6
**imposed** [4] - 18:17, 19:9, 23:10, 25:14
**imprisonment** [6] - 4:1, 17:11, 17:13, 17:19, 18:1, 19:24
**improvement** [1] - 33:6
**IN** [1] - 1:1
**incarceration** [2] - 31:9, 32:20
**incident** [2] - 31:14, 32:17
**inclined** [1] - 30:13
**include** [1] - 15:13
**indicated** [4] - 26:22, 27:13, 27:16, 28:13
**indictment** [8] - 2:11, 2:15, 2:24, 9:23, 9:25, 24:24, 25:4, 25:10
**influences** [2] - 32:4, 33:14
**information** [1] - 24:6
**initial** [1] - 30:17
**innocence** [3] - 7:16, 7:19, 7:22
**innocent** [1] - 7:18
**institutionalized** [1] - 32:13
**instruct** [1] - 9:8
**instrumental** [2] - 33:5, 33:13
**insult** [1] - 18:6
**intelligence** [1] - 18:7
**intend** [1] - 2:23
**intent** [2] - 12:17, 13:8
**intentionally** [6] - 10:22, 11:3, 12:16, 13:7, 13:16, 13:23
**interest** [1] - 22:15
**interstate** [2] - 12:14, 13:5
**investigation** [4] - 21:25, 22:1, 22:3, 26:4
**involved** [4] - 11:19, 11:25, 12:15, 13:6
**IOWA** [1] - 1:1
**Iowa** [7] - 1:10, 1:11, 10:9, 10:16, 12:11, 13:2, 31:16
**issue** [3] - 26:14, 26:15, 34:4
**issued** [2] - 18:21, 35:13
**issues** [3] - 27:22, 27:24, 32:2

## J

**Jacobsen** [1] - 1:16
**Jesus** [1] - 4:15
**JOHNSON** [18] - 1:16, 6:2, 6:15, 14:15, 14:23, 16:19, 16:22, 16:25, 17:3, 17:7, 23:19, 23:22, 23:25, 26:16, 26:18, 30:4, 34:2, 38:3
**Johnson** [28] - 1:16, 2:10, 2:21, 3:13, 3:15, 5:22, 5:25, 6:13, 6:17, 6:24, 7:4, 8:8, 14:13, 15:16, 15:19, 16:1, 16:8, 16:16, 19:12, 22:9, 23:17, 26:15, 29:19, 34:1, 34:15, 35:10, 36:13, 38:1
**joined** [8] - 10:22, 11:3, 11:8, 11:14, 13:16, 13:23, 14:4, 14:10
**journey** [1] - 33:5
**judge** [29] - 3:3, 3:4, 3:5, 3:12, 7:8, 7:17, 7:21, 9:8, 18:20, 18:25, 19:1, 19:3, 19:4, 19:10, 19:22, 19:23, 19:25, 21:1, 21:6, 21:11, 21:14, 22:13, 22:20, 22:21, 23:7, 23:11, 25:23, 26:1, 36:12
**Judge** [1] - 1:9
**jurors** [2] - 7:5, 9:8
**jury** [12] - 6:7, 7:2, 7:5, 7:9, 7:10, 7:12, 7:17, 7:22, 9:8, 9:16, 20:16, 25:15
**justice** [1] - 31:11
**justify** [2] - 26:13, 30:22

## K

**keep** [1] - 29:25
**keeping** [1] - 34:14
**kind** [4] - 27:6, 28:12, 28:19, 29:1
**kindly** [1] - 33:7
**knowing** [4] - 12:18, 13:9, 25:18, 35:5
**knowingly** [6] - 3:22, 4:13, 12:12, 12:16, 13:4, 13:7
**knows** [3] - 25:13, 25:15, 36:13

## L

**lack** [1] - 27:3
**Langhurst** [1] - 27:13
**language** [2] - 4:22, 37:6
**last** [1] - 36:2
**latter** [1] - 30:7
**laudatory** [2] - 35:20, 36:1
**laundering** [2] - 2:15, 25:5
**law** [5] - 7:7, 26:22, 34:6, 34:16, 36:4
**lawyer** [1] - 6:11
**learned** [2] - 34:23, 34:25
**least** [2] - 14:15, 17:16
**leave** [1] - 35:22
**led** [1] - 30:23
**legal** [2] - 23:20, 32:15
**less** [2] - 19:5, 20:1
**lessons** [1] - 34:23
**letter** [5] - 27:13, 27:16, 31:3, 31:5, 33:18
**letters** [5] - 26:23, 27:9, 29:5, 31:4, 35:2
**letting** [1] - 33:18
**lie** [2] - 3:22, 4:5
**life** [9] - 17:17, 20:24, 27:11, 31:13, 33:9, 33:10, 33:15, 33:21, 36:3
**lifestyle** [1] - 27:4
**lifetime** [2] - 18:2, 28:23
**likely** [1] - 21:6
**limited** [1] - 37:18
**listed** [1] - 19:6
**local** [1] - 21:4
**located** [1] - 35:12
**location** [2] - 12:20, 13:11
**lose** [1] - 20:15
**loss** [1] - 20:18
**love** [2] - 31:17, 32:19
**lurch** [1] - 35:23

## M

**magistrate** [2] - 3:2, 3:12
**Magistrate** [1] - 1:9
**mandatory** [7] - 17:10, 17:15, 17:21, 19:25, 26:12, 28:4, 28:5
**Mark** [1] - 1:9
**marked** [1] - 31:21
**materials** [1] - 16:24
**matter** [5] - 2:10, 26:23, 29:20, 36:9, 38:23
**maximum** [6] - 17:12, 17:18, 17:25, 18:16, 19:14, 25:13
**mean** [3] - 18:6, 35:14, 35:19
**means** [6] - 7:10, 7:16, 8:2, 18:9, 18:11, 19:4
**mechanisms** [1] - 32:8
**medications** [2] - 5:9, 32:18
**meds** [3] - 32:15, 32:16, 37:3
**member** [1] - 31:12
**members** [1] - 35:23
**mental** [8] - 4:12, 4:25, 5:10, 28:20, 28:23, 32:2, 37:9
**mentioned** [3] - 3:15, 20:21, 35:7
**merit** [1] - 36:5
**met** [1] - 28:2
**microphone** [1] - 2:17
**might** [11] - 5:6, 5:13, 15:12, 15:20, 15:21, 20:5, 21:15, 22:3, 22:10, 30:11, 37:8
**million** [1] - 17:14
**mind** [2] - 23:9, 33:1
**minimum** [4] - 17:10, 18:17, 19:25, 25:13
**minute** [2] - 15:18, 24:7
**Miss** [1] - 27:13
**mixture** [2] - 11:19, 11:25
**money** [2] - 2:14, 25:5
**monitored** [1] - 20:25
**month** [1] - 24:9
**months** [3] - 18:24, 26:21, 36:2
**most** [3] - 18:4, 22:14, 35:21
**motivators** [1] - 31:19
**Mountain** [1] - 33:3
**move** [2] - 2:17, 31:15
**moved** [1] - 27:4
**moving** [1] - 26:8
**MR** [25] - 6:2, 6:15, 14:15, 14:23, 16:12, 16:15, 16:19, 16:22, 16:25, 17:3, 17:7, 21:23, 23:19, 23:22, 23:25, 24:4, 26:16, 26:18, 29:16, 30:4, 30:16, 34:2, 34:5, 37:25, 38:3
**must** [1] - 31:21

## N

**name** [1] - 4:14
**nature** [3] - 12:20, 13:11, 29:16
**necessarily** [1] - 29:23
**necessary** [2] - 33:2, 33:20
**need** [6] - 3:16, 6:3, 9:21, 32:24, 33:10
**needing** [1] - 28:6
**negative** [2] - 32:4, 33:14
**never** [2] - 8:16, 35:24
**new** [3] - 26:22, 31:16, 34:16
**newfound** [1] - 31:16
**next** [3] - 24:8, 24:9
**nobody** [1] - 9:5
**non** [1] - 27:2
**nonappearance** [2] - 26:11, 35:16
**none** [1] - 5:11
**nonlawyer** [1] - 37:6
**nonviolent** [1] - 27:2
**noon** [1] - 27:21
**norm** [2] - 28:11, 29:3
**NORTHERN** [1] - 1:1
**Northern** [5] - 1:10, 10:9, 10:16, 12:11, 13:2
**nothing** [1] - 14:18
**Number** [1] - 2:7
**number** [1] - 3:11
**nurturing** [1] - 33:15

## O

**oath** [6] - 3:17, 3:19, 3:22, 7:6, 29:14, 30:14

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com to purchase a complete copy of the transcript.*

**objection** [3] - 26:1, 29:13, 29:18
**objections** [1] - 25:25
**obviously** [3] - 26:24, 28:7, 29:5
**OF** [3] - 1:1, 1:3, 1:6
**offense** [4] - 20:14, 29:21, 29:24, 30:8
**offenses** [3] - 3:25, 4:8, 30:23
**offer** [6] - 8:19, 14:14, 14:16, 14:24, 15:1, 15:3
**offered** [1] - 15:4
**office** [4] - 20:16, 22:6, 22:12, 30:5
**officer** [2] - 20:25, 22:1
**often** [1] - 29:10
**old** [1] - 4:16
**older** [2] - 28:18, 28:20
**omissions** [1] - 22:10
**omitted** [2] - 23:24, 24:2
**one** [9] - 3:25, 10:3, 12:8, 14:15, 14:17, 15:4, 18:10, 28:13, 37:13
**ones** [1] - 35:13
**open** [2] - 8:4, 33:1
**opportunity** [2] - 2:20, 33:8
**order** [4] - 21:25, 26:3, 26:4, 36:7
**otherwise** [1] - 21:13
**outside** [1] - 28:11
**overcome** [1] - 7:19
**ownership** [2] - 12:20, 13:11

**P**

**p.m** [2] - 1:11, 38:8
**paranoid** [1] - 28:24
**parent** [1] - 32:22
**parenthood** [1] - 31:18
**parole** [5] - 17:13, 17:20, 19:18, 20:8, 20:9
**paroled** [1] - 20:8
**part** [3] - 12:19, 13:10, 37:4
**participating** [1] - 33:3
**parties** [1] - 25:24
**passed** [1] - 14:16
**past** [3] - 28:1, 31:21, 32:7
**path** [1] - 33:22
**pay** [1] - 8:23
**penalties** [4] - 17:9, 17:12, 17:19, 18:17
**pending** [2] - 28:2, 36:6
**people** [9] - 7:2, 7:4, 7:10, 18:4, 27:23, 33:10, 34:20, 34:21, 35:3
**per** [1] - 32:13
**percentage** [1] - 20:7
**perform** [1] - 18:20
**perhaps** [1] - 29:24
**period** [2] - 4:1, 22:5
**perjury** [1] - 3:24
**person** [2] - 2:9, 27:3
**personal** [1] - 33:6
**persons** [4] - 10:10, 10:16, 12:11, 13:3
**perspective** [1] - 31:17
**petition** [1] - 32:13
**physical** [1] - 5:10
**place** [2] - 31:15, 35:12
**placed** [1] - 20:22
**placing** [1] - 30:14
**Plaintiff** [2] - 1:4, 1:13
**plan** [1] - 10:2
**PLEA** [1] - 1:6
**plea** [23] - 2:10, 3:5, 4:13, 6:1, 9:15, 14:13, 14:16, 14:21, 14:24, 15:3, 15:23, 16:14, 21:21, 22:24, 23:8, 23:18, 23:21, 23:24, 24:3, 26:3, 26:9, 35:8, 38:7
**Plea** [1] - 1:9
**plead** [17] - 2:24, 6:5, 6:6, 8:9, 8:24, 9:14, 15:6, 21:24, 23:6, 23:14, 23:15, 24:11, 24:18, 24:20, 24:24, 25:3, 25:18
**pleaded** [1] - 25:9
**pleading** [1] - 14:24
**pleas** [6] - 9:21, 16:21, 17:2, 25:13, 25:21, 25:24
**point** [8] - 3:17, 6:3, 17:8, 22:10, 26:13, 27:7, 29:15, 33:25
**police** [1] - 32:17
**poor** [1] - 32:5
**position** [1] - 37:8
**positive** [3] - 31:13, 33:9, 33:23
**positively** [1] - 33:21
**possess** [2] - 20:17, 21:5
**possessing** [2] - 12:17, 13:8
**possibility** [3] - 17:13, 17:20, 19:17
**possible** [1] - 17:4
**post** [1] - 26:9
**post-plea** [1] - 26:9
**postconviction** [1] - 34:21
**pr** [1] - 31:16
**predicted** [1] - 19:13
**prefer** [1] - 6:7
**preferably** [1] - 16:8
**prepared** [4] - 2:1, 29:8, 30:5, 33:19
**prescription** [1] - 5:10
**present** [5] - 8:14, 8:18, 8:25, 22:19, 32:11
**presenten** [1] - 31:7
**presentence** [3] - 21:25, 22:2, 26:4
**presentencing** [3] - 31:8, 33:2
**preside** [4] - 3:5, 3:6, 3:8, 3:14
**pressure** [1] - 25:19
**pressured** [3] - 23:13, 24:10, 24:17
**presumed** [1] - 7:17
**presumption** [3] - 7:15, 7:18, 7:22
**pretrial** [5] - 26:21, 33:12, 34:13, 34:21, 35:17
**previous** [1] - 31:15
**previously** [1] - 28:8
**primary** [2] - 32:11, 36:22
**prison** [8] - 18:10, 19:17, 20:4, 20:6, 20:9, 20:22, 21:13, 35:23
**privately** [1] - 5:24
**probation** [6] - 20:25, 22:1, 22:6, 22:11, 31:8, 33:12
**procedures** [1] - 22:23
**proceed** [3] - 3:12, 26:17, 30:25
**proceeding** [2] - 3:6, 28:14
**proceedings** [4] - 5:7, 5:14, 29:17, 38:23
**proceeds** [4] - 12:15, 12:21, 13:6, 13:12
**produce** [1] - 8:17
**produced** [1] - 7:20
**profound** [1] - 31:18
**promises** [2] - 23:15, 25:19
**proof** [1] - 8:15
**prosecutor** [1] - 9:7
**prove** [18] - 9:25, 10:7, 10:12, 10:21, 10:25, 11:8, 11:11, 11:18, 11:22, 12:4, 12:7, 12:9, 12:23, 13:16, 13:20, 14:3, 14:7, 33:22
**proved** [1] - 7:20
**provide** [1] - 32:19
**provided** [1] - 6:24
**provides** [2] - 12:8, 28:19
**pry** [1] - 4:11
**public** [2] - 7:2, 20:16
**punishable** [2] - 17:10, 17:18
**punishments** [1] - 25:14
**purpose** [4] - 11:9, 11:15, 14:5, 14:11
**put** [2] - 22:7, 28:7

**Q**

**questions** [10] - 3:16, 4:5, 4:10, 15:21, 16:8, 22:22, 23:3, 24:14, 30:24, 36:18
**quiet** [1] - 22:4

**R**

**raise** [1] - 3:18
**range** [6] - 18:23, 18:24, 19:2, 19:4, 19:6, 19:21
**RAPIDS** [1] - 1:2
**Rapids** [3] - 1:11, 1:15, 1:18
**rather** [1] - 31:9
**RDR** [2] - 1:19, 38:24
**reached** [8] - 10:10, 10:17, 10:23, 11:4, 12:11, 13:3, 13:18, 13:24
**read** [4] - 10:3, 10:5, 33:18, 35:2
**reading** [2] - 4:21, 10:3
**ready** [1] - 16:4
**really** [3] - 4:11, 15:19, 22:15
**reason** [3] - 5:12, 5:25, 23:20
**reasonable** [4] - 7:21, 10:1, 12:5, 14:3
**reasons** [10] - 26:12, 28:7, 28:8, 28:10, 28:11, 29:2, 29:4, 29:25, 30:20
**rebuild** [1] - 33:21
**receive** [2] - 19:13, 20:4
**received** [1] - 2:15
**recognize** [1] - 32:24
**recommend** [1] - 9:20
**recommendation** [2] - 25:22, 26:2
**recommending** [1] - 25:23
**record** [5] - 3:10, 24:23, 25:8, 37:4, 37:14
**recording** [4] - 1:19, 2:2, 38:10, 38:23
**reduced** [1] - 20:5
**reflect** [2] - 3:10, 25:8
**reflected** [1] - 27:9
**reform** [1] - 36:2
**regarding** [2] - 23:3, 27:17
**regardless** [1] - 19:21
**regards** [3] - 26:19, 28:10, 31:3
**rehabilitation** [2] - 32:24, 33:13
**reject** [2] - 14:21, 15:6
**rejected** [1] - 15:1
**relatives** [1] - 27:12
**release** [23] - 17:16, 17:22, 18:3, 20:23, 21:2, 21:9, 21:11, 21:12, 21:14, 21:16, 26:13, 26:21, 28:2, 30:1, 31:8, 33:3, 33:8, 33:13, 34:13, 34:21, 35:17, 35:20, 36:6
**released** [7] - 27:20, 28:9, 29:4, 30:21, 32:12, 33:20, 36:25
**religiously** [1] - 27:19
**rely** [2] - 22:13, 29:5
**remain** [2] - 9:4, 28:9
**remind** [1] - 6:13
**removed** [2] - 27:3, 27:12
**report** [5] - 22:3, 22:8, 22:14, 25:22, 25:25
**report's** [1] - 22:17
**represent** [3] - 6:11, 6:17, 6:19
**represented** [1] - 2:7
**request** [2] - 31:7, 33:7

**required** [1] - 19:3
**resident** [1] - 27:18
**respect** [2] - 10:7, 31:17
**respectfully** [1] - 31:7
**responsibilities** [3] - 32:22, 36:3, 37:13
**responsibility** [4] - 31:10, 31:17, 31:18, 32:10
**responsible** [2] - 27:8, 31:12
**rest** [2] - 17:17, 20:24
**result** [4] - 18:23, 20:15, 21:20, 25:18
**returned** [1] - 9:17
**reviewed** [2] - 14:19, 30:4
**revoca** [1] - 28:5
**revoke** [1] - 21:12
**rights** [4] - 6:4, 20:18, 25:15, 25:16
**Rio** [1] - 33:4
**risk** [4] - 26:10, 26:11, 27:17, 35:15
**Roberts** [1] - 1:9
**role** [1] - 7:4
**rulings** [1] - 35:13
**run** [6] - 17:25, 18:9, 18:10, 18:11, 18:13, 19:16
**running** [1] - 18:5

## S

**s/Shelly** [1] - 38:24
**safe** [1] - 33:15
**safer** [1] - 18:8
**Salado** [1] - 33:4
**satisfied** [2] - 6:23, 9:22
**schedule** [2] - 22:17, 26:5
**schizophrenia** [1] - 28:24
**schizophrenic** [1] - 31:25
**school** [2] - 4:18, 32:23
**seated** [2] - 2:5, 3:21
**second** [7] - 10:20, 10:25, 13:15, 13:19, 14:17, 17:13, 17:20
**section** [1] - 7:3
**see** [5] - 8:4, 8:5, 22:10, 34:20, 36:5
**seeing** [1] - 20:8
**seeking** [1] - 32:6
**seem** [2] - 15:25, 34:24
**selected** [1] - 7:2
**selecting** [1] - 7:4
**self** [1] - 33:6
**self-improvement** [1] - 33:6
**Semmler** [3] - 1:19, 38:24, 38:24
**send** [1] - 21:12
**sentence** [16] - 15:11, 17:11, 18:1, 18:25, 19:3, 19:9, 19:14, 19:23, 20:4, 20:7, 20:22, 22:14, 22:22, 23:2, 23:10
**sentenced** [1] - 4:1
**sentences** [4] - 17:25, 18:5, 18:9, 18:13
**sentencing** [14] - 18:19, 18:21, 19:7, 21:1, 22:13, 22:18, 22:23, 26:5, 28:2, 29:12, 34:24, 36:6, 36:9
**Sentencing** [1] - 18:22
**separate** [1] - 32:20
**seriously** [1] - 27:15
**serve** [2] - 7:5, 20:16
**served** [3] - 8:21, 20:22, 21:15
**services** [1] - 6:24
**set** [2] - 28:12, 29:2
**seven** [1] - 28:22
**Seventh** [2] - 1:10, 1:14
**several** [1] - 26:21
**share** [1] - 31:21
**Shelly** [2] - 1:19, 38:24
**shift** [1] - 8:16
**shifted** [1] - 26:10
**shown** [1] - 35:17
**sign** [1] - 25:22
**signed** [1] - 3:13
**significant** [1] - 31:14
**silent** [1] - 9:4
**simply** [1] - 26:3
**single** [1] - 27:20
**singularly** [1] - 34:7
**Sioux** [1] - 1:20
**sister** [6] - 28:18, 28:20, 31:23, 32:12, 35:4, 36:21
**situation** [1] - 30:11
**Sixth** [1] - 1:19
**society** [2] - 31:12, 33:22
**someone** [3] - 37:8, 37:9, 37:15
**somewhat** [3] - 28:11, 28:12, 35:11
**source** [3] - 12:20, 13:11, 37:15
**Southeast** [3] - 1:10, 1:14, 1:17
**special** [3] - 17:15, 17:21, 18:2
**specifically** [2] - 27:12, 28:10
**specified** [4] - 12:15, 12:21, 13:6, 13:12
**speedy** [1] - 7:1
**spirits** [1] - 31:6
**stable** [1] - 31:19
**stage** [1] - 6:11
**stand** [1] - 3:18
**standard** [2] - 21:3, 29:3
**start** [1] - 18:12
**state** [3] - 4:12, 4:14, 21:4
**statement** [7] - 3:23, 3:24, 4:6, 29:8, 29:14, 30:2, 30:5
**statements** [2] - 4:7, 29:10
**STATES** [2] - 1:1, 1:3
**States** [10] - 1:9, 1:14, 2:6, 2:7, 2:8, 3:2, 3:4, 18:22, 20:25, 37:24
**statute** [1] - 19:24
**statutes** [1] - 19:7
**statutory** [1] - 19:14
**stay** [1] - 28:15
**stay-at-home** [1] - 28:15
**stays** [2] - 37:2, 37:3
**still** [5] - 4:19, 10:24, 11:5, 13:18, 13:25
**stop** [3] - 5:19, 5:22, 16:8
**Street** [1] - 1:19
**structure** [1] - 33:12
**student** [3] - 28:15, 32:23, 33:4
**stuff** [1] - 36:23
**subject** [2] - 29:15, 29:20
**subjecting** [1] - 30:15
**submit** [1] - 34:7
**subpoenas** [1] - 8:21
**substance** [6] - 2:13, 9:24, 11:19, 12:1, 12:18, 25:1
**substances** [2] - 13:9, 21:5
**substantively** [1] - 14:18
**suffered** [1] - 4:24
**suggest** [1] - 19:11
**suggests** [1] - 18:25
**suicide** [1] - 36:23
**Suite** [1] - 1:17
**summary** [1] - 9:13
**supervised** [10] - 17:16, 17:22, 18:3, 20:23, 21:2, 21:9, 21:10, 21:12, 21:14, 21:16
**supervising** [1] - 27:24
**support** [8] - 17:1, 28:19, 28:21, 32:19, 33:11, 36:22, 36:24, 37:2
**supporting** [1] - 35:5
**supposed** [1] - 37:5
**swear** [1] - 7:5
**SWORN** [1] - 3:20
**system** [4] - 20:10, 28:19, 28:21, 36:24

## T

**TAKING** [1] - 1:6
**tempted** [1] - 30:1
**term** [3] - 17:15, 17:22, 27:4
**terms** [1] - 21:10
**testify** [5] - 9:4, 9:5, 9:6, 9:10
**testimony** [1] - 8:7
**themselves** [1] - 9:10
**theory** [1] - 18:12
**therapy** [1] - 32:6
**therefore** [2] - 25:20, 26:9
**they've** [2] - 35:5, 37:18
**thinks** [1] - 29:25
**Third** [1] - 1:17
**third** [5] - 11:7, 11:10, 14:6, 17:14, 17:21
**thorough** [1] - 22:1
**threatened** [1] - 23:14
**threats** [1] - 25:19
**three** [1] - 12:4
**today** [19] - 3:6, 4:6, 4:12, 5:7, 5:17, 6:5, 6:6, 8:9, 8:25, 9:14, 14:22, 15:7, 15:9, 15:23, 21:25, 23:7, 30:6, 36:19, 38:3
**together** [2] - 15:5, 22:7
**topic** [1] - 34:6
**touch** [1] - 34:15
**toward** [2] - 33:5, 37:13
**transactions** [6] - 12:13, 12:15, 12:18, 13:5, 13:6, 13:9
**Transcribed** [1] - 1:19
**TRANSCRIPT** [1] - 1:6
**transcript** [3] - 2:1, 38:10, 38:22
**transformations** [1] - 31:14
**trauma** [1] - 33:15
**traumatizing** [3] - 31:22, 31:23, 32:3
**trial** [13] - 6:7, 6:18, 6:19, 7:2, 7:7, 7:12, 7:16, 7:21, 8:3, 8:16, 9:4, 9:14, 9:16
**tried** [1] - 36:22
**trouble** [1] - 32:15
**true** [10] - 10:5, 10:14, 11:2, 11:13, 11:24, 12:25, 13:13, 13:22, 14:9, 37:11
**truthfully** [1] - 4:5
**try** [1] - 7:6
**turn** [3] - 12:3, 28:16, 36:3
**turning** [1] - 27:7
**twice** [1] - 10:3
**two** [10] - 2:12, 5:23, 14:20, 15:20, 17:24, 18:13, 27:18, 28:16, 36:14, 37:13
**type** [2] - 28:25, 30:10
**typical** [1] - 28:12

## U

**U.S** [1] - 20:12
**U.S.C** [2] - 28:3, 28:6
**ultimately** [3] - 19:9, 23:10, 35:21
**unanimous** [1] - 7:9
**under** [12] - 3:17, 3:22, 7:6, 18:20, 19:24, 26:19, 28:2, 28:20, 29:2, 29:14, 30:14, 36:4
**underlying** [3] - 29:21, 30:8, 30:23
**understood** [1] - 24:8
**unhappy** [1] - 23:10
**UNITED** [2] - 1:1, 1:3
**United** [10] - 1:9, 1:14, 2:6, 2:7, 2:8, 3:2, 3:3, 18:21, 20:25, 37:24
**unlawful** [4] - 12:15, 12:21, 13:7, 13:12
**up** [11] - 5:23, 6:5, 8:10, 8:25, 18:2, 19:14, 19:17, 27:12, 27:18, 31:24, 37:19

**upbringing** [4] - 27:11, 31:22, 31:24, 32:3
**upward** [1] - 19:5

## V

**validity** [2] - 23:24, 24:3
**Valley** [1] - 33:3
**varies** [1] - 19:22
**verdict** [4] - 7:9, 7:11, 9:11, 9:17
**versus** [1] - 2:6
**victim** [1] - 32:3
**violate** [1] - 21:11
**violations** [3] - 21:16, 26:22, 34:16
**visit** [8] - 5:22, 5:24, 6:4, 15:15, 15:19, 16:1, 17:9, 30:3
**voluntarily** [7] - 4:13, 10:21, 11:2, 13:16, 13:22, 25:15, 27:3
**voluntary** [4] - 3:7, 23:18, 24:21, 25:18
**vote** [1] - 20:16
**vs** [1] - 1:5

## W

**waived** [1] - 25:15
**wandering** [2] - 32:16, 32:17
**week** [1] - 24:8
**weeks** [2] - 36:25, 37:1
**whatsoever** [1] - 27:25
**whole** [2] - 12:19, 13:10
**wholeheartedly** [1] - 34:19
**Wiezorek** [1] - 1:16
**wish** [2] - 37:4, 37:6
**wishes** [1] - 29:7
**withdraw** [1] - 23:8
**witnesses** [7] - 8:3, 8:5, 8:6, 8:10, 8:19, 8:21, 8:22
**worry** [1] - 22:5
**writing** [1] - 31:6
**written** [5] - 3:11, 14:16, 14:23, 26:3, 29:8
**wrote** [3] - 31:4, 31:5

## Y

**year** [2] - 4:20, 24:9
**years** [5] - 17:16, 17:23, 19:15, 19:16, 19:17
**years'** [5] - 17:11, 17:12, 17:19, 18:1, 19:23
**young** [1] - 28:16
**yourself** [1] - 34:18