IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) 23-CR-21
)
DOMINIQUE HOLLIDAY, )
)
Defendant. )

APPEARANCES:

ATTORNEY DILLAN EDWARDS, U.S. Attorney's Office, 111 Seventh Avenue S.E., Box 1, Cedar Rapids, Iowa 52401, appeared on behalf of the United States.

ATTORNEY BRIAN D. JOHNSON, of the firm of Jacobsen, Johnson & Wiezorek, 425 Second Street S.E., Suite 803, Cedar Rapids, Iowa 52401, appeared on behalf of the Defendant.

SENTENCING HEARING,

HELD BEFORE THE HON. C.J. WILLIAMS,

on the 1st day of May, 2024, at 111 Seventh Avenue S.E., Cedar Rapids, Iowa, commencing at 2:01 p.m., and reported by Patrice A. Murray, Certified Shorthand Reporter, using machine shorthand.

Transcript Ordered: 5/10/24
Transcript Completed: 5/28/24

Patrice A. Murray, CSR, RMR, FCRR
Court Reporter
PO Box 10541
Cedar Rapids, Iowa 52410
PAMurrayReporting@gmail.com

# INDEX


| EXHIBITS | PAGE |
|---|---|
| Exhibit 1 | 9 |

*****

| | |
|---|---|
| Exhibits A through D | 9 |

*****

(The following proceedings were held in open court.)

THE COURT: The matter now before the Court is United States of America versus Dominique Holliday, case number 23-CR-21. This matter comes on for a sentencing hearing. The United States is represented by Assistant United States Attorney Dillan Edwards. The defendant is personally present and represented by defense attorney Brian Johnson. Also present in the courtroom is United States Probation Officer Sara Campagna, who authored the presentence investigation report filed at document 47 in the court's file.

On December 28, 2023, the defendant pled guilty to two counts of a two-count indictment. Count 1 charged him with conspiring to distribute a controlled substance. This was in violation of Title 21 United States Code Sections 841(a)(1), 841(b)(1)(B), and 846. Count 2 charged the defendant with conspiracy to commit money laundering. And that was in violation of Title 18 United States Code Section 1956(h).

By statute, those crimes are punishable as follows. Count 1, the drug conspiracy count, is punishable by a 5-year mandatory minimum sentence and up to 40 years in prison without the possibility of parole. And Count 2, the money laundering charge, is punishable by up to 20 years in prison and without the possibility of parole.

So all told, the Court could sentence the defendant to as much as 60 years in prison without parole.

After the defendant has served his prison sentence, the Court will place him on a term of supervised release of at least 4 years, and it could be up to life on supervised release on Count 1; and up to 3 years on Count 2. Probation is not an option under these statutes.

The Court can impose a fine on Count 1 of up to $5 million, and up to a half million dollars on Count 2, for a total maximum possible fine of $5,500,000. The Court must also impose a special assessment of $100 for each count of conviction, for a total of $200 in special assessments.

Mr. Edwards, on behalf of the United States have you had a full and fair opportunity to review this presentence report?

MR. EDWARDS: Yes, Your Honor.

THE COURT: And does the government have any objections to the calculation of the advisory guidelines or anything else in this report?

MR. EDWARDS: No, Your Honor.

THE COURT: Thank you. Mr. Johnson, on behalf of the defendant, have you and your client had a full and fair opportunity to review this report?

MR. JOHNSON: Yes, Your Honor.

THE COURT: When I went through it, I noted that he had some objections. At paragraph 26A, having to do with the offense level and whether it should be reduced for so-called safety-valve eligibility. That objection is followed at paragraph 71, having to do with mandatory -- application of the mandatory minimum. And then you objected at paragraph 97 to whether there's grounds for an upward departure.

Are those all of the objections that Mr. Holliday had to this presentence report?

MR. JOHNSON: With regards to the presentence report, yes, Your Honor.

THE COURT: All right. Could you make a brief record of how you went through this report with your client.

MR. JOHNSON: Your Honor, Mr. Holliday has been held at the Fayette County Jail I believe for -- well, since this presentence report was published. I met -- went and met with him in person regarding the issues therein, filed the objections accordingly, and then did have a chance to meet with him in person prior to sentencing today.

THE COURT: All right. Very good. So Mr. Holliday, did you have an opportunity to go through this report on your own then, sir?

THE DEFENDANT: Yes, I did have an opportunity, Your Honor.

THE COURT: All right. And do you feel like you've had sufficient time to discuss this report with Mr. Johnson?

THE DEFENDANT: Yeah, yes, Your Honor.

THE COURT: Has he been able to answer any questions you might have had about this report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you have any questions today then about this presentence report?

THE DEFENDANT: No, just -- just the questions we had, the objections.

THE COURT: All right. Well, let's go through the calculation of the advisory guidelines then, as determined by the probation office. That calculation begins on page 8. For purposes of the guidelines, both counts of conviction are grouped for guideline calculations. The probation office determined that the base offense level for both offenses is 28. This is derived from the guidelines 2D1.1(c)(6) and 2S1.1(a)(1). That is driven by the amount of drugs involved in the drug conspiracy, which was at least 280 grams but less than 400 grams of fentanyl. Here, the probation office assessed the defendant as being responsible for 352 grams

of fentanyl.

The probation office assessed the defendant with a 2-level enhancement under guideline section 2S1.1(b)(2)(B), because the defendant was convicted of money laundering under Title 18 United States Code Section 1956. That gives us an adjusted offense level of 30.

The defendant has pled guilty to this offense, and so the probation office has awarded him with a 2-level reduction for acceptance of responsibility under guideline section 3E1.1(a).

Mr. Edwards, what is the government's position about whether the defendant should receive an additional 1-level reduction for acceptance under section 3E1.1(b)?

MR. EDWARDS: The government moves for the third level.

THE COURT: The Court grants that motion. So with 3 levels off for acceptance of responsibility, the defendant's total offense level is 27. The defendant has some criminal history, which the probation office has summarized and scored, beginning at paragraph 36, and carrying over to paragraph 45. His prior convictions have resulted in 4 criminal history points. That places him in criminal history category III. So with a total offense level of 27, criminal history category III, the

advisory guideline range of imprisonment is 87 to 108 months.

In preparation for today's hearing, I have reviewed in detail, of course, this presentence investigation report. I've also reviewed the pleadings filed by the parties. At document 52, the defendant filed a sentencing memorandum supported by a brief. At document 53, the government filed a sentencing memorandum and a motion for an upward departure or, alternatively, upward variance, and provided the Court with Exhibit 1. And then at document 55, the defendant provided the Court with letters of support and photographs, marked A through D.

Mr. Edwards, have I identified all the relevant pleadings, documents, and exhibits pertinent to today's hearing?

MR. EDWARDS: Yes, Your Honor.

THE COURT: And, Mr. Johnson, do you agree?

MR. JOHNSON: Yes, Your Honor.

THE COURT: All right. Mr. Edwards, are you moving Exhibit 1 into evidence?

MR. EDWARDS: Yes, Your Honor.

THE COURT: Any objection?

MR. JOHNSON: No, Your Honor.

THE COURT: 1 will be received.

(Whereupon, Exhibit 1 was received.)

THE COURT: And, Mr. Edwards, is there any matter we need to take up on a sealed record here today?

MR. EDWARDS: Yes, Your Honor.

THE COURT: All right. And then, Mr. Johnson, are you moving Exhibits A through D into evidence?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Any objection?

MR. EDWARDS: No, Your Honor.

THE COURT: A through D will be received.

(Whereupon, Exhibits A through D were received.)

THE COURT: All right. There are -- there is a guideline dispute here having to do with safety valve. Neither party indicated that they intended to call any witnesses at this hearing. Is that still the case, Mr. Edwards?

MR. EDWARDS: Yes, Your Honor.

THE COURT: Mr. Johnson?

MR. JOHNSON: Yes, Your Honor.

THE COURT: All right. So I'll hear argument first from the parties on the safety-valve eligibility issue. I'll rule on that, and then we'll turn to other matters before the Court.

And so I'll hear first from the government on this issue, and then from Mr. Johnson, and then I'll make a

ruling.

So, Mr. Edwards.

MR. EDWARDS: Thank you, Your Honor. The defendant does not qualify for safety valve relief because the offense involved serious bodily injury, namely, the overdose on two different occasions of A.R. The government has set forth in its briefing its -- its argument as to Mr. Kunde's distribution of those pills to A.R. as being relevant conduct because it was within the -- within the scope of the jointly undertaken criminal activity; namely, the defendant sent approximately 3,200 pills to Kunde over eight months for the purpose of Kunde to redistribute those.

Kunde's distribution to A.R. was in furtherance of that criminal activity. The purpose of the conspiracy was to distribute the fentanyl pills. And it was reasonably foreseeable to the defendant that Mr. Kunde would distribute the pills. The defendant in his briefing argues that A.R.'s overdose was not reasonably foreseeable, but that's not the standard. The standard of relevant conduct for harm under 1B1.3(a)(1), (4) -- or (3), states that relevant conduct includes all harm that resulted from the acts and omissions that, as I just talked about, were within the scope, in furtherance of, and reasonably foreseeable. And so, really, the focus

is: Was Kunde's distribution to A.R. within the scope, in furtherance of, and reasonably foreseeable, which, as I set forth in our briefing, is yes. And then also part of relevant conduct is any harm that resulted from that, namely, A.R.'s overdose on two different occasions. And it's clear from the unobjected-to portions of the presentence investigation report that A.R. suffered from serious bodily injury.

So taking that together, that factor -- and the government is conceding that it's only that factor -- that removes him from safety-valve eligibility. Thank you.

THE COURT: Thank you.

Mr. Johnson.

MR. JOHNSON: Thank you, Your Honor. Obviously, this is just kind of two -- two different options of looking at the facts and circumstances in this case. As I indicated in my briefing, I have no reason to dispute that Mr. Kunde was the individual who distributed to Ms. Ridgeway and that she did overdose as a result. That's not really the issue here. This is a situation where the discovery file does reflect that Mr. Kunde had additional sources of controlled substances. That -- as set forth in the -- in the presentence report, that Mr. Kunde was receiving shipments immediately after from

Mr. -- Mr. Holliday that shows that this was something that he had reached out to him post the distribution that occurred on these back-to-back evenings on December 9th and December 10th where Ms. Ridgeway overdosed during that time period.

Your Honor, in terms of looking at the case law cited in the government's brief, I believe, frankly, the Court -- or the government did cite to *Watley* correctly. And that was a multiple degree-of-separation charge. But what jumped out to me or what I noted in reading that decision out of the Eighth Circuit from just a couple years ago is that this was much more of a -- while it was more degrees of separation, it was much more of a direct chain, meaning that the -- that the facts that the Court set forth in that decision indicates that the -- the heroin in question that ended up causing the overdose was out of the pool, essentially, that initiated with the defendant in that case, Mr. Watley. In this case, there is an additional source, additional spring, so to speak, as far as how that can come through, where that pill came from.

Again, the dispute here is Mr. Holliday's involvement. We're not -- this is not a situation where we're trying to claim that Ms. Ridgeway didn't overdose or anything along those lines. It really is boiled down

to that issue and what is actually relevant conduct in terms of Mr. Holliday's involvement. While Mr. Holliday has pled guilty to a conspiracy case, as set forth in the -- frankly, in the PSI, it's very clear that this wasn't a, at least for Mr. Holliday's involvement, was not a spiderweb-type of conspiracy where he's dealing with multiple other individuals and things like that. And, frankly, that's not the case with Mr. Kunde, where he was dealing with other sources.

So, Your Honor, we do not believe that the safety valve should be disqualified here. As the government concedes, he meets all the other conditions for eligibility there. And so we would ask the Court to allow for that 2-level reduction, as well as potentially taking the statutory mandatory minimum off the table. Thank you.

THE COURT: All right. Thank you.

MR. EDWARDS: Your Honor, if I may just briefly respond.

THE COURT: You may.

MR. EDWARDS: I just want to direct the Court's attention to paragraphs 14 and 16 of the presentence investigation report, which aren't objected to, that lay out the circumstances of the overdose. And in there, it says that the pills that Kunde distributed to A.R. were

received from the defendant. So it's clear that, from at least the unobjected-to portions here, that the chain is clear, the defendant, to Kunde, to A.R., which caused her overdose. Thanks.

THE COURT: Thank you. The burden here is by a preponderance of the evidence, and I find that here it's been proven by a preponderance of the evidence that the distribution did result in an overdose, and the pills did come from the defendant as part of the conspiracy. And I too was focused on the language of the presentence investigation report at paragraphs 14 and 16. They are unobjected to, and the language is very clear. It says, "On December 9, 2021, Kunde distributed ten fentanyl pills that he had obtained from the defendant to Ann Ridgeway, and then Ann Ridgeway overdosed." And then paragraph 16 states, "On December 10, 2021, after Ann Ridgeway had been released from Mercy Medical Center as related to the above noted overdose, Kunde distributed ten fentanyl pills that he had obtained from the defendant to Ridgeway," and then again it goes on to indicate that she then ingested those pills and overdosed. Consistent with that is on the 13th then, Kunde paid the defendant for -- made some payments at least toward the purchase of those pills that he had distributed to Ridgeway.

So from the unobjected-to language of the presentence investigation report, it appears plain to the Court that there's no dispute that the drugs the defendant distributed to Kunde that were then distributed to Ridgeway are directly related to her overdoses. And there is no dispute by the defense that the overdoses constitute serious bodily injury that would keep him from qualifying for safety-valve eligibility. The only question in dispute here is whether he is responsible for the pills, not whether the pills -- not whether -- the legal question of whether the overdose would constitute a basis for keeping the defendant from qualifying for safety-valve eligibility.

I agree just from the standpoint of what the law is that, here, the government need not show that the outcome was reasonably foreseeable, simply that the conduct, the injury that resulted, was directly related and within the scope of the conspiracy. But even if the test here was reasonable foreseeability, anybody distributing fentanyl pills has to understand that it was reasonably foreseeable that someone is going to overdose on fentanyl pills. That is obvious for anybody in the drug market that is dealing in fentanyl these days.

So I am overruling the defendant's objections at paragraphs 26A and 71 and finding that the defendant is

not safety valve eligible and that it was properly scored by the probation office here.

All right. Let's take up at sidebar a matter on a sealed record. And, Mr. Johnson, if you could make sure your client has headphones on so he can listen in on this.

MR. JOHNSON: Yes, Your Honor.

* * * * *

(A discussion was held at a sidebar and is sealed by the Court.)

* * * * *

(The following was held in open court.)

THE COURT: All right. As I mentioned at the beginning of the hearing, the government has made a motion for an upward departure, alternatively, an upward variance. That, and the ultimate sentence to be imposed, are the only things remaining before the Court. And so I will hear first from the government on their motion and the sentence that the government believes is appropriate here, and then I'll hear from Mr. Johnson on behalf of the defendant, and then I'll hear from Mr. Holliday if he wishes to say anything to me, and then I will impose sentence.

So, Mr. Edwards I'm happy to hear from you first, sir.

MR. EDWARDS: Thank you, Your Honor. The government is asking the Court to depart or vary upward to a sentence of 121 months. Here, the nature and circumstances of the offense are aggravating. The defendant, in Arizona, was sending in total approximately 3,200 fentanyl pills to Iowa. Each pill, with the danger that fentanyl poses, could turn out to be deadly. And so the circumstances here are extremely aggravating.

And by the defendant's history and characteristics, this wasn't somebody that was selling these drugs to support his own habit. He was merely selling these drugs to make a profit.

The government's motion for an upward departure or variance is contained in our briefing. Just put simply, as set forth in our briefing, the guidelines that we arrive at today don't account for the harm that the defendant caused through the chain of Mr. Kunde to A.R. as we discussed previously, so I won't go down that road again; but, simply, the departure is to reflect the seriousness of the danger that was realized in the overdoses on those two separate occasions for A.R.

So the government is asking the Court to impose a 121-month sentence. Thank you.

THE COURT: Thank you.

Mr. Johnson.

MR. JOHNSON: Thank you, Your Honor. Your Honor, to be clear, do you want me to address everything with regards to sentencing or just the departure at this point?

THE COURT: Everything, please. Thank you.

MR. JOHNSON: Your Honor, we are, in light of the Court's rulings on both the safety valve and other matters today, we are asking for the Court to consider a sentence at the mandatory minimum of 60 months or certainly within the original guideline range. I would disagree, frankly, that this does not account for the -- the conduct that was -- was done in this case. The quantity, the amount, that the government cites to is very clearly, obviously, contained within the -- within the conduct, based on the -- that's how we get to our total offense levels in drug cases.

The overdose of Ms. Ridgeway, again, I don't think is disputed certainly at all, that this was not something that Mr. Holliday had any direct involvement with. This was not a situation where Ms. Ridgeway, as opposed to Mr. Kunde's involvement, where Ms. Ridgeway overdosed, then returned to Mr. Kunde [sic], and immediately there he sold her additional drugs in order to facilitate the overdose on the next night. Again, while I understand the Court's ruling today, Mr. Holliday did not directly

deal with Ms. Ridgeway ever. There's no indication in the discovery file that they knew each other remotely.

Regarding the other factors for sentencing, Your Honor, as stated under seal but not anything that would be really covered by under-seal discussions, Mr. Holliday ceased any kind of criminal activity after essentially his child was born. This is a situation, you know, analogously to some other, you know, Supreme Court cases and things like that, where Mr. Holliday very much removed himself from the criminal lifestyle, that he rededicated himself to his family. That's reflected in the PSI. That's reflected in the letters of support that were filed. That this was somebody who didn't get busted in the middle of a sale or anything along those lines. This was somebody who had moved on, and had participated in making himself a better person, a better father, and things along those lines. I think that, frankly, comes not only from the maturity that comes from becoming a father but also the maturity of him becoming a more mature adult. As indicated in some of the letters, as well as the PSI, Mr. Holliday had a pretty difficult upbringing. There -- ultimately, while he's 28 years old now, he's not a kid anymore, I certainly think that that can account for some of the, you know, later maturity in life as far as that goes.

He's somebody who has a great deal of potential. He's jumped around a fair amount as far as jobs, but certainly has the capability of working. He has a -- frankly, he's got his high school diploma. He has a very good high school GPA. I noted the PSI indicated that was a 3.0-plus GPA. This is somebody who is, obviously, very capable of providing a good life for his child and for his family. He has positive support. He's had support from the get-go in this case, who are trying to keep him and working with him to encourage this healthier, noncriminal lifestyle that he's chosen to lead since 2021.

So for those reasons, Your Honor, we are asking for the Court to consider -- certainly to deny the upward variance, to consider the possibility of a sentence below the guidelines. This is not somebody who needs, in my opinion -- and I think it's reflected by the PSI -- needs the kind of personal deterrence here. He has very clearly made an effort and made a decision on his own to not engage in the criminal lifestyle, and then shown that during several months of pretrial release. So for those reasons, Your Honor, we don't believe that the government's motion should be granted, and we would ask the Court to impose the sentence that is not greater than necessary to accomplish our goals here. Thank you.

THE COURT: Thank you, Mr. Johnson.

Mr. Holliday, this is the time in the hearing when you have an opportunity to speak to me directly, to tell me anything you'd like me to take into account in determining your sentence. Of course, you don't have to say anything. If you choose not to say anything, I won't hold that against you in any way. But if there is anything you would like to say, now is the time to do so. Is there anything you would like to say, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Go right ahead.

THE DEFENDANT: Well, first, I would like to say thank you for allowing me to speak. And I would like to say I am sorry for my actions, both to you, to our country, to my family, that I -- that I -- that I fell into the -- the things that I was doing that led to me aiding and distributing pills.

I -- I would -- I would like to say that I did have a rough upbringing, but when I moved to Iowa I was able to -- I was able to finish high school, and I finished high school with a 3.06 GPA I believe. And right after high school, my aunt, who took me in, she moved to California for a family emergency, and so then, once again, like I was in Arizona, I was homeless again. I had to drop -- I had just started at Kirkwood. I had to

drop out. I had to get a job. And so for, like, the first few months, I was living out of my car. I -- I had to couch surf.

I eventually did start, I don't know, having bad coping mechanisms, using drugs, and involved myself with the wrong people. That led to me meeting Colton Kunde. And I -- I believe that once I -- so when I was in Arizona, at first, when I first moved there, I was still associated with him. But I -- I found out my fiancée was pregnant, and she told me she didn't want me using drugs anymore or helping -- doing any criminal activity, and I let that go. I got into college at Rio Salado College in Arizona. I was in Rio Salado College when my daughter was about one years old, one and a half, when they served the indictment. I continued in college throughout my pretrial release. I was -- I was doing well and finishing my classes and going into my -- I was going into my -- what would that be? -- my fall semester when I had to get detained.

My daughter just turned two in February. I missed that, but I was -- I was able to video call from jail. I've been there along the way. At night I sing her, you know, nursery rhymes, and I'm in contact with my fiancée and my daughter. And before -- before the indictment, I was literally there every day of her life. I never

missed a day. I was -- at first, I was working, and then I was a stay-at-home father, so -- because my wife wanted to work while I was in college. So I would just do online classes, and then I would watch my daughter. And I was with my daughter literally 24/7. If my wife -- if my fiancée needed to sleep throughout the night for work in the morning, I'm up at 2:00 a.m., 3:00 a.m., 4:00 a.m. with my daughter, getting her back to sleep.

I would like to say I'm sorry to my family that I have been gone these five months, and I haven't been able to celebrate the milestones I've been missing, like she just had her photo day and her second birthday.

And I would like to ask the Court to give me a second chance because I -- I'm a completely changed person than I was back in 2020-2021. My life's priorities aren't on, you know, drugs or anything anymore. I've been completely separated from that. And, honestly, the only people I see throughout the day are people at work, my wife, and my daughter. I don't have friend groups that I go hang out with anymore. I completely disassociated from anybody that I was associating with.

I know that I wasn't able to get granted the safety valve, but I was just hoping that there was some type of possibility that I would relatively soon be able to be

back with my family and be a good father to my daughter, that she wouldn't have to go any more time without being with me. And that's -- that's pretty much all I have to say.

THE COURT: Thank you, Mr. Holliday.

In arriving at a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing, I have considered all the factors at Title 18 United States Code Section 3553(a), even if I don't mention each of them in my comments here today.

Turning first to the offense conduct here, the offense conduct is -- is aggravating. It's very troubling. The distribution of fentanyl is incredibly dangerous. The defendant was, as the government noted, involved in this just for the money. It's easy money. He wasn't himself addicted or a user of fentanyl. He was distributing it to make money. And it is a poison. And once you put that poison into distribution, you are responsible for what happens to other people down the road. Even if you didn't intend it, even if you didn't want it to happen, when you put a dangerous item out there, it's like setting off a bomb, a time bomb, and letting it go. You don't know what's going to happen. You don't know who's going to get hurt by it. And fentanyl is just an incredibly dangerous drug, and it's

killing people every day in America. And the defendant knowingly got involved in the distribution of an incredibly dangerous drug just to make money off of addicts, who couldn't help theirselves from using this drug.

So all that is very aggravating. But this case is also unique in many ways when you look at the history and characteristics of the defendant here. He is a relatively young man of 28. This really isn't his background. Although he has some criminal history, his criminal history is of, comparatively, minor offenses, of disorderly conduct, possession of drugs, looting, minor theft, trespass. Not felony drug trafficking. Not weapons violations. No violence here.

He did have a troubled childhood, early childhood. But when he ultimately came to Iowa and was provided for by some responsible people, he really showed what he could do. He did well in high school. He graduated from high school with a very good GPA. He has been gainfully employed, albeit limited duration at different places, and his earnings have been up and down over the years, but he has demonstrated the ability to work hard when he wants to. This is also a unique situation where the defendant did cease his own involvement in drug distribution on his own before he had contact with law

enforcement officers and did walk away from this kind of criminal conduct on his own.

He was on pretrial release with this Court. He did have one violation of testing positive for marijuana, but no action was taken. And then ultimately he was taken into custody in December when he pled guilty to the offense here.

When I am trying to arrive at a sentence that is intended to achieve all the goals of sentencing, I have to take into account multiple things. One thing the defense mentioned was deterring the defendant here. And I tend to agree with Mr. Johnson, that when we're talking about specific deterrence, I don't have a lot of concern that this defendant will ever do anything like this again given his voluntary removal from the drug conspiracy and the seriousness of the conduct here and the consequences. I think this is enough to deter Mr. Holliday from ever doing anything like this again.

There are other goals of sentencing, and that includes general deterrence. That is, imposing a sentence sufficiently severe to deter other people from engaging in this type of conduct. And I need to impose a sentence sufficiently severe to reflect the seriousness of the criminal conduct and protect the community as well.

Turning to the issues here on the upward departure, the government is seeking an upward departure under 5K2.2 for physical injury resulting from the criminal conduct. And I would find that an upward departure or, alternatively, an upward variance is appropriate here. There's no question in my mind that the fentanyl the defendant distributed through Kunde ultimately to an ultimate user resulted in serious injury to a woman who is just lucky that she had people around to administer Narcan that kept her from dying from it. And so an upward departure or, alternatively, an upward variance is appropriate under 5K2.2 here.

However, I'm also going to then vary downward from where I would otherwise go. And I think the government was asking for a 3-level upward departure or variance. That would take us to a level 30, criminal history category III, for an advisory guideline range of imprisonment of 121 to 151 months. And I would otherwise find that to be appropriate. But here, I also find that there are mitigating factors, in particular, the defendant's ceasing his own -- on his own his involvement in this conspiracy, and demonstrating in the two years after his conduct in 2021 that he can lead a law-abiding life, that this is -- a sentence of 121 months would be more than necessary to achieve the goals of sentencing

here and would not reflect what I think is the promise of Mr. Holliday that he has to be a productive member of society that he's been able to demonstrate.  He has great promise with his -- with his intelligence and the performance he did in high school, and earning a 3 point GPA, and his ability to work.  He has a lot of promise, and I just don't think a sentence of 121 months is necessary to achieve the goals of sentencing here.

However, a significant sentence is appropriate to achieve the other goals of sentencing of general deterrence and to reflect the seriousness of what is a very serious offense here.  And so I'm going to find here that the sentence at the bottom of what was the prior advisory guideline range here will be sufficient but not greater than necessary to achieve the goals of sentencing.

And so it is the judgment of this Court, Mr. Holliday, that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 87 months.  This term consists of 87 months on Counts 1 and 2 to be served concurrently or at the same time.

It is recommended that you be designated to a Bureau of Prisons facility in close proximity to your family commensurate with your security and custody

classification needs. I also recommend that you participate in the Bureau of Prisons 500-hour Comprehensive Residential Drug Abuse Treatment Program or an alternate substance abuse treatment program.

Upon release from imprisonment, you will be placed on supervised release for a term of 5 years. This term consists of 5 years on Count 1 and 3 years on Count 2, to be served concurrently or at the same time.

While on supervised release, you must comply with the following mandatory conditions: You must not commit another federal, state, or local crime; you must not unlawfully use or possess a controlled substance; and you must cooperate in the collection of a DNA sample as directed by your probation officer.

In addition, you must comply with the standard conditions of supervision set out in my judgment order, together with all the special conditions set out at paragraphs 84 through 86 of the presentence report.

It is ordered that you must pay to the United States a special assessment of $200, which is due immediately. I find that you do not have the ability to pay a fine or community restitution, and none will be imposed.

You are hereby remanded to the custody of the United States Marshal.

Mr. -- well, Mr. Johnson, you agree, I assume, from

the Government's Exhibit 1 that there is an appeal waiver here; is that correct?

MR. JOHNSON: I agree there is one signed, yes, Your Honor.

THE COURT: All right. So, Mr. Edwards, before I advise the defendant of his limited rights to appeal, is there anything else on behalf of the United States?

MR. EDWARDS: No, Your Honor.

THE COURT: Officer Campagna?

PROBATION OFFICER: No, Your Honor.

THE COURT: And Mr. Johnson?

MR. JOHNSON: No, Your Honor.

THE COURT: All right. Mr. Holliday, let me talk to you, sir, about what I referred to as limited rights to appeal under an appeal waiver. And what that means in this case is you signed a document with the government in which you have given up or surrendered your right to appeal except under limited circumstances set out in that paragraph. So what I'm about to tell you about your appeal applies only if you believe under the terms of that agreement you can do so.

But if you are going to appeal, it's going to be to a higher court called the Eighth Circuit Court of Appeals. To appeal to that court, you would have to file a written notice of appeal with the Clerk of Court for

the Northern District of Iowa here in Cedar Rapids within the next 14 days. If you fail to file a written notice of appeal in the next 14 days, you give up forever your right to appeal the sentence I've just imposed. Now, if you would like to appeal but you can't afford the services of an attorney to do so, I would appoint an attorney to represent you on appeal at no expense to you. Do you understand your right to appeal, sir?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything we've done here today, sir?

THE DEFENDANT: I -- I did have a question about the limited right to appeal.

THE COURT: Yes, sir.

THE DEFENDANT: I was -- I was under the impression the entire time that -- that -- that the government was going to -- was going to file a 5K1 motion, and that's -- that's the only reason I did sign that, because he -- that's what the prosecutor -- that's what he was saying in discussions. So I don't think that I should only have a limited right to appeal if -- if -- if I -- I basically signed to waive my right to appeal for no reason because he -- he said multiple times that -- that we were -- that everything was going in the way of that direction, and that's why he finally said he

wrote the cooperation -- or whatever, you know, the agreement was written because he said that he was going to make that motion. And for no other -- no other reason would I have signed it. So I just -- I think it would be unfair for the Court to say that, that I can't file an appeal under other grounds.

THE COURT: Well, Mr. Holliday, I understand your position on that. The problem I see with that position is it's inconsistent with the language of the agreement that you signed in which the government made it very clear it wasn't making any promises, it wasn't guaranteeing any reduction, it wasn't going to promise you that you were going to get any reduction, only that it would consider your cooperation. And so the very document you signed makes it fairly clear on its face that there are no promises, regardless of what you may have understood, and it also makes it clear on the face of the document that any discussion that was held outside of -- of this document, it doesn't bind the government. It's only what's in this document that binds the government. And so you didn't have to sign it or -- containing that language in there making no promises, saying this is the only agreement and no other discussions makes any difference here. And you signed it. Now, you signed it with the hope that something was

going to happen, but -- but that's what the document says.

If you disagree with my conclusion on that, you can attempt to appeal this issue to the Eighth Circuit Court of Appeals, and the Court of Appeals can take a look at the document and determine whether you have a right to appeal or not, and that's something that a higher court can take into account. And if you want to do that, then you need to file a notice of appeal in the next 14 days and raise this issue with the Court of Appeals. But my reading of the document is there is no promises the government made to you that -- that is binding on them at this point. And so that's my finding.

So I understand your frustration at this and maybe what your expectations were, but that's my conclusion on that. And, again, if you are unhappy with that, you are welcome to appeal that issue to the Court of Appeals.

THE DEFENDANT: Okay. All right.

THE COURT: All right. Mr. Johnson, anything further?

MR. JOHNSON: No, Your Honor. Not today, Your Honor.

THE COURT: Mr. Edwards?

MR. EDWARDS: No, Your Honor.

THE COURT: Thank you. That concludes this

hearing.

(Proceedings concluded at 2:50 p.m.)

C E R T I F I C A T E

I, Patrice A. Murray, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that at the time and place heretofore indicated, a hearing was held before the Honorable C.J. Williams; that I reported in shorthand and transcribed to the best of my ability the proceedings of said hearing; and that the foregoing transcript is a true record of all proceedings had on the taking of said hearing at the above time and place.

I further certify that I am not related to or employed by any of the parties to this action, and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have set my hand this 28th day of May, 2024.

/s/ Patrice A. Murray

Patrice A. Murray, CSR, RMR, FCRR
Court Reporter
PO Box 10541
Cedar Rapids, Iowa 52410

## $

**$100** [1] - 4:11
**$200** [2] - 4:12, 29:20
**$5,500,000** [1] - 4:10

## /

**/s** [1] - 35:12

## 1

**1** [13] - 1:10, 2:3, 3:13, 3:21, 4:6, 4:8, 8:10, 8:21, 8:25, 9:1, 28:21, 29:7, 30:1
**1-level** [1] - 7:14
**10** [1] - 14:16
**10541** [2] - 1:24, 35:13
**108** [1] - 8:2
**10th** [1] - 12:4
**111** [2] - 1:10, 1:17
**121** [4] - 17:3, 27:18, 27:24, 28:7
**121-month** [1] - 17:23
**13th** [1] - 14:22
**14** [5] - 13:22, 14:11, 31:2, 31:3, 33:9
**151** [1] - 27:18
**16** [3] - 13:22, 14:11, 14:16
**18** [3] - 3:18, 7:5, 24:8
**1956** [1] - 7:6
**1956(h)** [1] - 3:19
**1B1.3(a)(1** [1] - 10:21
**1st** [1] - 1:17

## 2

**2** [6] - 3:16, 3:23, 4:7, 4:9, 28:21, 29:7
**2-level** [3] - 7:3, 7:9, 13:14
**20** [1] - 3:25
**2020-2021** [1] - 23:15
**2021** [4] - 14:13, 14:16, 20:12, 27:23
**2023** [1] - 3:12
**2024** [2] - 1:17, 35:10
**21** [1] - 3:15
**23-CR-21** [2] - 1:5, 3:4
**24/7** [1] - 23:5
**26A** [2] - 5:2, 15:25
**27** [2] - 7:19, 7:25
**28** [4] - 3:12, 6:20, 19:22, 25:9
**280** [1] - 6:23
**28th** [1] - 35:9
**2:00** [1] - 23:7
**2:01** [1] - 1:18
**2:50** [1] - 34:2
**2D1.1(c)(6** [1] - 6:21
**2S1.1(a)(1)** [1] - 6:21
**2S1.1(b)(2)(B** [1] - 7:4

## 3

**3** [5] - 4:6, 7:18, 10:22, 28:5, 29:7
**3,200** [2] - 10:12, 17:6
**3-level** [1] - 27:15
**3.0-plus** [1] - 20:6
**3.06** [1] - 21:21
**30** [2] - 7:7, 27:16
**352** [1] - 6:25
**3553(a** [1] - 24:9
**36** [1] - 7:21
**3:00** [1] - 23:7
**3E1.1(a)** [1] - 7:11
**3E1.1(b** [1] - 7:14

## 4

**4** [3] - 4:5, 7:23, 10:21
**40** [1] - 3:22
**400** [1] - 6:24
**425** [1] - 1:12
**45** [1] - 7:22
**47** [1] - 3:10
**4:00** [1] - 23:7

## 5

**5** [3] - 4:9, 29:6, 29:7
**5-year** [1] - 3:22
**5/10/24** [1] - 1:21
**5/28/24** [1] - 1:21
**500-hour** [1] - 29:2
**52** [1] - 8:6
**52401** [2] - 1:10, 1:13
**52410** [2] - 1:24, 35:14
**53** [1] - 8:8
**55** [1] - 8:11
**5K1** [1] - 31:17
**5K2.2** [2] - 27:2, 27:12

## 6

**60** [2] - 4:2, 18:9

## 7

**71** [2] - 5:5, 15:25

## 8

**8** [1] - 6:17
**803** [1] - 1:12
**84** [1] - 29:18
**841(a)(1** [1] - 3:16
**841(b)(1)(B** [1] - 3:16
**846** [1] - 3:16
**86** [1] - 29:18
**87** [3] - 8:1, 28:20

## 9

**9** [3] - 2:3, 2:6, 14:13
**97** [1] - 5:7
**9th** [1] - 12:3

## A

**a.m** [3] - 23:7
**A.R** [9] - 10:6, 10:9, 10:14, 11:1, 11:7, 13:25, 14:3, 17:17, 17:21
**A.R.'s** [2] - 10:19, 11:5
**abiding** [1] - 27:23
**ability** [4] - 25:22, 28:6, 29:21, 35:4
**able** [8] - 6:7, 21:19, 21:20, 22:21, 23:10, 23:23, 23:25, 28:3
**Abuse** [1] - 29:3
**abuse** [1] - 29:4
**acceptance** [3] - 7:10, 7:14, 7:18
**accomplish** [1] - 20:25
**accordingly** [1] - 5:20
**account** [6] - 17:16, 18:11, 19:24, 21:4, 26:10, 33:8
**achieve** [6] - 24:7, 26:9, 27:25, 28:8, 28:10, 28:15
**action** [3] - 26:5, 35:7, 35:8
**actions** [1] - 21:14
**activity** [4] - 10:11, 10:15, 19:6, 22:11
**acts** [1] - 10:23
**addicted** [1] - 24:16
**addicts** [1] - 25:4
**addition** [1] - 29:15
**additional** [5] - 7:13, 11:23, 12:19, 18:23
**address** [1] - 18:2
**adjusted** [1] - 7:6
**administer** [1] - 27:9
**adult** [1] - 19:20
**advise** [1] - 30:6
**advisory** [5] - 4:19, 6:15, 8:1, 27:17, 28:14
**afford** [1] - 31:5
**aggravating** [4] - 17:4, 17:8, 24:12, 25:6
**ago** [1] - 12:12
**agree** [5] - 8:18, 15:14, 26:12, 29:25, 30:3
**agreement** [4] - 30:21, 32:2, 32:10, 32:23
**ahead** [1] - 21:11
**aiding** [1] - 21:17
**albeit** [1] - 25:20
**allow** [1] - 13:14
**allowing** [1] - 21:13
**alternate** [1] - 29:4
**alternatively** [4] - 8:9, 16:15, 27:5, 27:11
**America** [2] - 3:3, 25:1
**AMERICA** [1] - 1:3
**amount** [3] - 6:22, 18:13, 20:2
**analogously** [1] - 19:8
**Ann** [3] - 14:14, 14:15, 14:16
**answer** [1] - 6:7
**appeal** [22] - 30:1, 30:6, 30:15, 30:18, 30:20, 30:22, 30:24, 30:25, 31:3, 31:4, 31:5, 31:7, 31:8, 31:13, 31:21, 31:22, 32:6, 33:4, 33:7, 33:9, 33:17
**Appeals** [5] - 30:24, 33:5, 33:10, 33:17
**APPEARANCES** [1] - 1:9
**appeared** [2] - 1:11, 1:13
**application** [1] - 5:6
**applies** [1] - 30:20
**appoint** [1] - 31:6
**appropriate** [5] - 16:19, 27:5, 27:12, 27:19, 28:9
**argues** [1] - 10:19
**argument** [2] - 9:20, 10:8
**Arizona** [4] - 17:5, 21:24, 22:8, 22:13
**arrive** [2] - 17:16, 26:8
**arriving** [1] - 24:6
**assessed** [2] - 6:25, 7:2
**assessment** [2] - 4:11, 29:20
**assessments** [1] - 4:13
**Assistant** [1] - 3:5
**associated** [1] - 22:9
**associating** [1] - 23:22
**assume** [1] - 29:25
**attempt** [1] - 33:4
**attention** [1] - 13:22
**ATTORNEY** [1] - 1:10
**Attorney** [1] - 3:6
**attorney** [5] - 1:12, 3:7, 31:6, 31:7, 35:8
**Attorney's** [1] - 1:10
**aunt** [1] - 21:22
**authored** [1] - 3:9
**Avenue** [2] - 1:10, 1:17
**awarded** [1] - 7:9

## B

**back-to-back** [1] - 12:3


*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*

**background** [1] - 25:10
**bad** [1] - 22:4
**base** [1] - 6:20
**based** [1] - 18:15
**basis** [1] - 15:12
**becoming** [2] - 19:18, 19:19
**BEFORE** [1] - 1:16
**beginning** [2] - 7:21, 16:14
**begins** [1] - 6:17
**behalf** [6] - 1:11, 1:13, 4:14, 4:22, 16:20, 30:7
**believes** [1] - 16:19
**below** [1] - 20:15
**best** [1] - 35:4
**better** [2] - 19:16
**bind** [1] - 32:19
**binding** [1] - 33:12
**binds** [1] - 32:20
**birthday** [1] - 23:12
**bodily** [3] - 10:5, 11:8, 15:7
**boiled** [1] - 12:25
**bomb** [2] - 24:22
**born** [1] - 19:7
**bottom** [1] - 28:13
**Box** [3] - 1:10, 1:24, 35:13
**Brian** [1] - 3:8
**BRIAN** [1] - 1:12
**brief** [3] - 5:13, 8:7, 12:7
**briefing** [6] - 10:7, 10:19, 11:3, 11:18, 17:14, 17:15
**briefly** [1] - 13:18
**burden** [1] - 14:5
**Bureau** [3] - 28:19, 28:23, 29:2
**busted** [1] - 19:13

C

**C.J** [2] - 1:16, 35:3
**calculation** [3] - 4:19, 6:15, 6:16
**calculations** [1] - 6:19
**California** [1] - 21:23
**call** [2] - 9:14, 22:21
**called** [2] - 5:4, 30:23
**Campagna** [2] - 3:9, 30:9
**capability** [1] - 20:3
**capable** [1] - 20:7
**car** [1] - 22:2
**carrying** [1] - 7:22
**case** [12] - 3:3, 9:15, 11:18, 12:6, 12:18, 13:3, 13:8, 18:12, 20:9, 25:6, 30:16
**cases** [2] - 18:16, 19:8
**category** [3] - 7:24, 7:25, 27:17
**caused** [2] - 14:3, 17:17
**causing** [1] - 12:16
**cease** [1] - 25:24
**ceased** [1] - 19:6
**ceasing** [1] - 27:21
**Cedar** [6] - 1:10, 1:13, 1:18, 1:24, 31:1, 35:14
**celebrate** [1] - 23:11
**Center** [1] - 14:17
**certainly** [5] - 18:10, 18:18, 19:23, 20:3, 20:14
**Certified** [2] - 1:19, 35:2
**certify** [2] - 35:2, 35:6
**chain** [3] - 12:14, 14:2, 17:17
**chance** [2] - 5:21, 23:14
**changed** [1] - 23:14
**characteristics** [2] - 17:9, 25:8
**charge** [2] - 3:24, 12:9
**charged** [2] - 3:13, 3:17
**child** [2] - 19:7, 20:7
**childhood** [2] - 25:15
**choose** [1] - 21:6
**chosen** [1] - 20:11
**Circuit** [3] - 12:11, 30:23, 33:4
**circumstances** [5] - 11:17, 13:24, 17:4, 17:8, 30:18
**cite** [1] - 12:8
**cited** [1] - 12:7
**cites** [1] - 18:13
**claim** [1] - 12:24
**classes** [2] - 22:17, 23:4
**classification** [1] - 29:1
**clear** [9] - 11:6, 13:4, 14:1, 14:3, 14:12, 18:2, 32:11, 32:15, 32:17
**clearly** [2] - 18:14, 20:19
**Clerk** [1] - 30:25
**client** [3] - 4:23, 5:15, 16:5
**close** [1] - 28:24
**Code** [4] - 3:15, 3:19, 7:5, 24:9
**collection** [1] - 29:13
**college** [3] - 22:12, 22:15, 23:3
**College** [2] - 22:12, 22:13
**Colton** [1] - 22:6
**commencing** [1] - 1:18
**commensurate** [1] - 28:25
**comments** [1] - 24:10
**commit** [2] - 3:17, 29:10
**committed** [1] - 28:18
**community** [2] - 26:24, 29:22
**comparatively** [1] - 25:11
**Completed** [1] - 1:21
**completely** [3] - 23:14, 23:17, 23:21
**comply** [2] - 29:9, 29:15
**Comprehensive** [1] - 29:3
**concedes** [1] - 13:12
**conceding** [1] - 11:10
**concern** [1] - 26:13
**concluded** [1] - 34:2
**concludes** [1] - 33:25
**conclusion** [2] - 33:3, 33:15
**concurrently** [2] - 28:21, 29:8
**conditions** [4] - 13:12, 29:10, 29:16, 29:17
**conduct** [17] - 10:9, 10:21, 10:22, 11:4, 13:1, 15:16, 18:12, 18:15, 24:11, 24:12, 25:12, 26:2, 26:16, 26:22, 26:24, 27:3, 27:23
**consequences** [1] - 26:16
**consider** [4] - 18:8, 20:14, 20:15, 32:14
**considered** [1] - 24:8
**consistent** [1] - 14:22
**consists** [2] - 28:20, 29:7
**conspiracy** [10] - 3:17, 3:21, 6:23, 10:15, 13:3, 13:6, 14:9, 15:18, 26:15, 27:22
**conspiring** [1] - 3:14
**constitute** [2] - 15:7, 15:11
**contact** [2] - 22:23, 25:25
**contained** [2] - 17:14, 18:14
**containing** [1] - 32:22
**continued** [1] - 22:15
**controlled** [3] - 3:14, 11:23, 29:12
**convicted** [1] - 7:4
**conviction** [2] - 4:12, 6:18
**convictions** [1] - 7:22
**cooperate** [1] - 29:13
**cooperation** [2] - 32:1, 32:14
**coping** [1] - 22:5
**correct** [1] - 30:2
**correctly** [1] - 12:8
**couch** [1] - 22:3
**counsel** [1] - 35:8
**count** [3] - 3:13, 3:21, 4:12
**Count** [10] - 3:13, 3:16, 3:21, 3:23, 4:6, 4:8, 4:9, 29:7
**country** [1] - 21:15
**counts** [2] - 3:13, 6:18
**Counts** [1] - 28:21
**County** [1] - 5:17
**couple** [1] - 12:11
**course** [2] - 8:4, 21:5
**COURT** [43] - 1:1, 3:2, 4:18, 4:22, 5:1, 5:13, 5:23, 6:3, 6:7, 6:10, 6:14, 7:17, 8:18, 8:20, 8:23, 8:25, 9:2, 9:5, 9:8, 9:10, 9:12, 9:18, 9:20, 11:13, 13:17, 13:20, 14:5, 16:13, 17:24, 18:5, 21:1, 21:11, 24:5, 30:5, 30:9, 30:11, 30:13, 31:10, 31:14, 32:7, 33:19, 33:23, 33:25
**Court** [33] - 1:23, 3:2, 4:1, 4:4, 4:8, 4:11, 7:17, 8:10, 8:11, 9:23, 12:8, 12:14, 13:13, 15:3, 16:10, 16:17, 17:2, 17:22, 18:8, 19:8, 20:14, 20:24, 23:13, 26:3, 28:17, 30:23, 30:25, 32:5, 33:4, 33:5, 33:10, 33:17, 35:13
**court** [5] - 3:1, 16:12, 30:23, 30:24, 33:7
**Court's** [3] - 13:21, 18:7, 18:25
**court's** [1] - 3:11
**courtroom** [1] - 3:8
**covered** [1] - 19:5
**crime** [1] - 29:11
**crimes** [1] - 3:20
**criminal** [16] - 7:20, 7:23, 7:24, 7:25, 10:11, 10:15, 19:6, 19:10, 20:20, 22:11, 25:10, 25:11, 26:2, 26:24, 27:3, 27:16
**CSR** [2] - 1:23, 35:12
**custody** [4] - 26:6, 28:19, 28:25, 29:23

D

**danger** [2] - 17:6, 17:20
**dangerous** [4] - 24:14, 24:21, 24:25, 25:3
**daughter** [8] - 22:13, 22:20, 22:24, 23:4, 23:5, 23:8, 23:19, 24:1
**days** [4] - 15:23, 31:2, 31:3, 33:9
**deadly** [1] - 17:7
**deal** [2] - 19:1, 20:1
**dealing** [3] - 13:6, 13:9, 15:23
**December** [6] - 3:12, 12:3, 12:4, 14:13, 14:16, 26:6
**decision** [3] - 12:11, 12:15, 20:19
**DEFENDANT** [10] - 6:1, 6:6, 6:9, 6:12, 21:10, 21:12, 31:9, 31:12, 31:15, 33:18
**Defendant** [2] - 1:7, 1:13
**defendant** [39] - 3:6, 3:12, 3:17, 4:1, 4:3, 4:23, 6:25, 7:2, 7:4, 7:8, 7:13, 7:19, 8:6, 8:11, 10:4, 10:11, 10:17, 10:18, 12:18, 14:1, 14:3, 14:9, 14:14, 14:20, 14:23, 15:4, 15:12, 15:25, 16:21, 17:5, 17:17, 24:14, 25:1, 25:8, 25:24, 26:11, 26:14, 27:7, 30:6
**defendant's** [4] - 7:19, 15:24, 17:9, 27:21
**defense** [3] - 3:7, 15:6, 26:11
**degree** [1] - 12:9
**degree-of-separation** [1] - 12:9
**degrees** [1] - 12:13
**demonstrate** [1] - 28:3

**demonstrated** [1] - 25:22
**demonstrating** [1] - 27:22
**deny** [1] - 20:14
**depart** [1] - 17:2
**departure** [11] - 5:8, 8:9, 16:15, 17:13, 17:19, 18:3, 27:1, 27:2, 27:4, 27:11, 27:15
**derived** [1] - 6:21
**designated** [1] - 28:23
**detail** [1] - 8:4
**detained** [1] - 22:19
**deter** [2] - 26:17, 26:21
**determine** [1] - 33:6
**determined** [2] - 6:16, 6:19
**determining** [1] - 21:5
**deterrence** [4] - 20:18, 26:13, 26:20, 28:11
**deterring** [1] - 26:11
**difference** [1] - 32:24
**different** [4] - 10:6, 11:5, 11:16, 25:20
**difficult** [1] - 19:21
**Dillan** [1] - 3:6
**DILLAN** [1] - 1:10
**diploma** [1] - 20:4
**direct** [3] - 12:13, 13:21, 18:19
**directed** [1] - 29:14
**direction** [1] - 31:25
**directly** [4] - 15:5, 15:17, 18:25, 21:3
**disagree** [2] - 18:11, 33:3
**disassociated** [1] - 23:21
**discovery** [2] - 11:22, 19:2
**discuss** [1] - 6:4
**discussed** [1] - 17:18
**discussion** [2] - 16:9, 32:18
**discussions** [3] - 19:5, 31:20, 32:24
**disorderly** [1] - 25:12
**dispute** [6] - 9:13, 11:19, 12:22, 15:3, 15:6, 15:9
**disputed** [1] - 18:18
**disqualified** [1] - 13:11
**distribute** [3] - 3:14, 10:16, 10:18
**distributed** [8] - 11:19, 13:25, 14:13, 14:18, 14:25, 15:4, 27:7
**distributing** [3] - 15:19, 21:17, 24:17
**distribution** [9] - 10:8, 10:14, 11:1, 12:2, 14:8, 24:13, 24:18, 25:2, 25:25
**District** [1] - 31:1
**DISTRICT** [2] - 1:1, 1:1
**DNA** [1] - 29:13
**document** [12] - 3:10, 8:6, 8:8, 8:11, 30:16, 32:15, 32:18, 32:19, 32:20, 33:1, 33:6, 33:11
**documents** [1] - 8:15
**dollars** [1] - 4:9
**DOMINIQUE** [1] - 1:6
**Dominique** [1] - 3:3
**done** [2] - 18:12, 31:11
**down** [4] - 12:25, 17:18, 24:19, 25:21
**downward** [1] - 27:13
**driven** [1] - 6:22
**drop** [2] - 21:25, 22:1
**Drug** [1] - 29:3
**drug** [10] - 3:21, 6:23, 15:22, 18:16, 24:25, 25:3, 25:5, 25:13, 25:24, 26:15
**drugs** [9] - 6:22, 15:3, 17:10, 17:11, 18:23, 22:5, 22:10, 23:16, 25:12
**due** [1] - 29:20
**duration** [1] - 25:20
**during** [2] - 12:4, 20:21
**dying** [1] - 27:10

**E**

**early** [1] - 25:15
**earning** [1] - 28:5
**earnings** [1] - 25:21
**easy** [1] - 24:15
**EDWARDS** [15] - 1:10, 4:17, 4:21, 7:15, 8:17, 8:22, 9:4, 9:9, 9:17, 10:3, 13:18, 13:21, 17:1, 30:8, 33:24
**Edwards** [11] - 3:6, 4:14, 7:12, 8:14, 8:20, 9:2, 9:16, 10:2, 16:24, 30:5, 33:23
**effort** [1] - 20:19
**eight** [1] - 10:12
**Eighth** [3] - 12:11, 30:23, 33:4
**eligibility** [6] - 5:4, 9:21, 11:11, 13:13, 15:8, 15:13
**eligible** [1] - 16:1
**emergency** [1] - 21:23
**employed** [3] - 25:20, 35:7, 35:8
**employee** [1] - 35:7
**encourage** [1] - 20:10
**ended** [1] - 12:16
**enforcement** [1] - 26:1
**engage** [1] - 20:20
**engaging** [1] - 26:22
**enhancement** [1] - 7:3
**entire** [1] - 31:16
**essentially** [2] - 12:17, 19:6
**evenings** [1] - 12:3
**eventually** [1] - 22:4
**evidence** [4] - 8:21, 9:6, 14:6, 14:7
**except** [1] - 30:18
**Exhibit** [5] - 2:3, 8:10, 8:21, 9:1, 30:1
**exhibits** [1] - 8:15
**EXHIBITS** [1] - 2:2
**Exhibits** [3] - 2:6, 9:6, 9:11
**expectations** [1] - 33:15
**expense** [1] - 31:7
**extremely** [1] - 17:8

**F**

**face** [2] - 32:15, 32:17
**facilitate** [1] - 18:23
**facility** [1] - 28:24
**factor** [2] - 11:9, 11:10
**factors** [3] - 19:3, 24:8, 27:20
**facts** [2] - 11:17, 12:14
**fail** [1] - 31:2
**fair** [3] - 4:15, 4:24, 20:2
**fairly** [1] - 32:15
**fall** [1] - 22:18
**family** [7] - 19:11, 20:8, 21:15, 21:23, 23:9, 24:1, 28:24
**far** [3] - 12:20, 19:25, 20:2
**father** [4] - 19:16, 19:19, 23:2, 24:1
**Fayette** [1] - 5:17
**FCRR** [2] - 1:23, 35:12
**February** [1] - 22:20
**federal** [1] - 29:11
**feel** [1] - 6:3
**fell** [1] - 21:15
**felony** [1] - 25:13
**fentanyl** [14] - 6:24, 7:1, 10:16, 14:13, 14:19, 15:19, 15:21, 15:23, 17:6, 17:7, 24:13, 24:16, 24:25, 27:6
**few** [1] - 22:2
**fiancée** [3] - 22:9, 22:23, 23:6
**file** [8] - 3:11, 11:22, 19:2, 30:24, 31:2, 31:17, 32:5, 33:9
**filed** [6] - 3:10, 5:20, 8:5, 8:6, 8:8, 19:13
**finally** [1] - 31:25
**financially** [1] - 35:8
**find** [6] - 14:6, 27:4, 27:19, 28:12, 29:21
**finding** [2] - 15:25, 33:13
**fine** [3] - 4:8, 4:10, 29:21
**finish** [1] - 21:20
**finished** [1] - 21:20
**finishing** [1] - 22:17
**firm** [1] - 1:12
**first** [10] - 9:21, 9:24, 16:18, 16:24, 21:12, 22:2, 22:8, 23:1, 24:11
**five** [1] - 23:10
**focus** [1] - 10:25
**focused** [1] - 14:10
**followed** [1] - 5:5
**following** [3] - 3:1, 16:12, 29:10
**follows** [1] - 3:20
**FOR** [1] - 1:1
**foregoing** [1] - 35:4
**foreseeability** [1] - 15:19
**foreseeable** [6] - 10:17, 10:20, 10:25, 11:2, 15:16, 15:21
**forever** [1] - 31:3
**forth** [6] - 10:7, 11:3, 11:24, 12:15, 13:3, 17:15
**frankly** [6] - 12:7, 13:4, 13:8, 18:11, 19:17, 20:4
**friend** [1] - 23:20
**frustration** [1] - 33:14
**full** [2] - 4:15, 4:23
**furtherance** [3] - 10:14, 10:24, 11:2

**G**

**gainfully** [1] - 25:19
**general** [2] - 26:20, 28:10
**get** [8] - 18:15, 19:13, 20:9, 22:1, 22:19, 23:23, 24:24, 32:13
**get-go** [1] - 20:9
**getting** [1] - 23:8
**give** [2] - 23:13, 31:3
**given** [2] - 26:15, 30:17
**gives** [1] - 7:6
**goals** [8] - 20:25, 24:7, 26:9, 26:19, 27:25, 28:8, 28:10, 28:15
**government** [24] - 4:18, 7:15, 8:8, 9:24, 10:7, 11:10, 12:8, 13:11, 15:15, 16:14, 16:18, 16:19, 17:2, 17:22, 18:13, 24:14, 27:2, 27:14, 30:17, 31:17, 32:10, 32:19, 32:21, 33:12
**Government's** [1] - 30:1
**government's** [4] - 7:12, 12:7, 17:13, 20:23
**GPA** [5] - 20:5, 20:6, 21:21, 25:19, 28:6
**graduated** [1] - 25:18
**grams** [3] - 6:23, 6:24, 6:25
**granted** [2] - 20:23, 23:23
**grants** [1] - 7:17
**great** [2] - 20:1, 28:3
**greater** [3] - 20:24, 24:7, 28:15
**grounds** [2] - 5:8, 32:6
**grouped** [1] - 6:18
**groups** [1] - 23:20
**guaranteeing** [1] - 32:12

**guideline** [8] - 6:18, 7:3, 7:11, 8:1, 9:13, 18:10, 27:17, 28:14
**guidelines** [6] - 4:19, 6:15, 6:17, 6:21, 17:15, 20:16
**guilty** [4] - 3:12, 7:8, 13:3, 26:6

## H

**habit** [1] - 17:11
**half** [2] - 4:9, 22:14
**hand** [1] - 35:9
**hang** [1] - 23:20
**happen** [3] - 24:21, 24:23, 33:1
**happens** [1] - 24:19
**happy** [1] - 16:24
**hard** [1] - 25:22
**harm** [4] - 10:21, 10:22, 11:4, 17:16
**headphones** [1] - 16:5
**healthier** [1] - 20:10
**hear** [6] - 9:20, 9:24, 16:18, 16:20, 16:21, 16:24
**hearing** [10] - 3:5, 8:3, 8:16, 9:15, 16:14, 21:2, 34:1, 35:3, 35:4, 35:5
**HEARING** [1] - 1:15
**held** [6] - 3:1, 5:17, 16:9, 16:12, 32:18, 35:3
**HELD** [1] - 1:16
**help** [1] - 25:4
**helping** [1] - 22:11
**hereby** [3] - 28:18, 29:23, 35:2
**hereto** [1] - 35:8
**heretofore** [1] - 35:3
**heroin** [1] - 12:16
**high** [8] - 20:4, 20:5, 21:20, 21:21, 21:22, 25:18, 25:19, 28:5
**higher** [2] - 30:23, 33:7
**himself** [4] - 19:10, 19:11, 19:16, 24:16
**history** [9] - 7:20, 7:23, 7:24, 7:25, 17:9, 25:7, 25:10, 25:11, 27:16
**hold** [1] - 21:7
**HOLLIDAY** [1] - 1:6
**Holliday** [19] - 3:3, 5:9, 5:16, 5:24, 12:1, 13:2, 16:21, 18:19, 18:25, 19:5, 19:9, 19:21, 21:2, 24:5, 26:17, 28:2, 28:18, 30:13, 32:7
**Holliday's** [3] - 12:22, 13:2, 13:5
**home** [1] - 23:2
**homeless** [1] - 21:24
**HON** [1] - 1:16
**honestly** [1] - 23:18
**Honor** [38] - 4:17, 4:21, 4:25, 5:12, 5:16, 6:2, 6:6, 6:9, 8:17, 8:19, 8:22, 8:24, 9:4, 9:7, 9:9, 9:17, 9:19, 10:3, 11:15, 12:6, 13:10, 13:18, 16:7, 17:1, 18:1, 18:2, 18:6, 19:4, 20:13, 20:22, 21:10, 30:4, 30:8, 30:10, 30:12, 33:21, 33:22, 33:24
**Honorable** [1] - 35:3
**hope** [1] - 32:25
**hoping** [1] - 23:24
**hurt** [1] - 24:24

## I

**identified** [1] - 8:14
**III** [3] - 7:24, 7:25, 27:17
**immediately** [3] - 11:25, 18:22, 29:20
**impose** [6] - 4:8, 4:11, 16:22, 17:22, 20:24, 26:22
**imposed** [3] - 16:16, 29:22, 31:4
**imposing** [1] - 26:20
**impression** [1] - 31:16
**imprisoned** [1] - 28:19
**imprisonment** [3] - 8:1, 27:18, 29:5
**IN** [2] - 1:1, 35:9
**includes** [2] - 10:22, 26:20
**inconsistent** [1] - 32:9
**incredibly** [3] - 24:13, 24:25, 25:3
**INDEX** [1] - 2:1
**indicate** [1] - 14:21
**indicated** [5] - 9:14, 11:18, 19:20, 20:5, 35:3
**indicates** [1] - 12:15
**indication** [1] - 19:1
**indictment** [3] - 3:13, 22:15, 22:24
**individual** [1] - 11:19
**individuals** [1] - 13:7
**ingested** [1] - 14:21
**initiated** [1] - 12:17
**injury** [6] - 10:5, 11:8, 15:7, 15:17, 27:3, 27:8
**intelligence** [1] - 28:4
**intend** [1] - 24:20
**intended** [2] - 9:14, 26:9
**interested** [1] - 35:8
**investigation** [6] - 3:10, 8:4, 11:7, 13:23, 14:11, 15:2
**involved** [5] - 6:22, 10:5, 22:5, 24:15, 25:2
**involvement** [7] - 12:23, 13:2, 13:5, 18:19, 18:21, 25:24, 27:21
**IOWA** [1] - 1:1
**Iowa** [10] - 1:10, 1:13, 1:18, 1:24, 17:6, 21:19, 25:16, 31:1, 35:2, 35:14
**issue** [7] - 9:22, 9:25, 11:21, 13:1, 33:4, 33:10, 33:17
**issues** [2] - 5:19, 27:1
**item** [1] - 24:21

## J

**Jacobsen** [1] - 1:12
**jail** [1] - 22:21
**Jail** [1] - 5:17
**job** [1] - 22:1
**jobs** [1] - 20:2
**JOHNSON** [15] - 1:12, 4:25, 5:11, 5:16, 8:19, 8:24, 9:7, 9:19, 11:15, 16:7, 18:1, 18:6, 30:3, 30:12, 33:21
**Johnson** [17] - 1:12, 3:8, 4:22, 6:5, 8:18, 9:5, 9:18, 9:25, 11:14, 16:4, 16:20, 17:25, 21:1, 26:12, 29:25, 30:11, 33:19
**jointly** [1] - 10:10
**judgment** [2] - 28:17, 29:16
**jumped** [2] - 12:10, 20:2

## K

**keep** [2] - 15:7, 20:9
**keeping** [1] - 15:12
**kept** [1] - 27:10
**kid** [1] - 19:23
**killing** [1] - 25:1
**kind** [4] - 11:16, 19:6, 20:18, 26:1
**Kirkwood** [1] - 21:25
**knowingly** [1] - 25:2
**Kunde** [17] - 10:12, 10:13, 10:17, 11:19, 11:22, 11:25, 13:8, 13:25, 14:3, 14:13, 14:18, 14:23, 15:4, 17:17, 18:22, 22:6, 27:7
**Kunde's** [4] - 10:8, 10:14, 11:1, 18:21

## L

**language** [5] - 14:10, 14:12, 15:1, 32:9, 32:22
**laundering** [3] - 3:18, 3:24, 7:5
**law** [4] - 12:6, 15:14, 25:25, 27:23
**law-abiding** [1] - 27:23
**lay** [1] - 13:23
**lead** [2] - 20:11, 27:23
**least** [5] - 4:5, 6:23, 13:5, 14:2, 14:24
**led** [2] - 21:16, 22:6
**legal** [1] - 15:11
**less** [1] - 6:23
**letters** [3] - 8:12, 19:12, 19:20
**letting** [1] - 24:23
**level** [7] - 5:3, 6:20, 7:6, 7:16, 7:19, 7:25, 27:16
**levels** [2] - 7:18, 18:16
**life** [5] - 4:5, 19:25, 20:7, 22:25, 27:24
**life's** [1] - 23:15
**lifestyle** [3] - 19:10, 20:11, 20:20
**light** [1] - 18:6
**limited** [6] - 25:20, 30:6, 30:14, 30:18, 31:13, 31:21
**lines** [3] - 12:25, 19:14, 19:17
**listen** [1] - 16:5
**literally** [2] - 22:25, 23:5
**living** [1] - 22:2
**local** [1] - 29:11
**look** [2] - 25:7, 33:5
**looking** [2] - 11:17, 12:6
**looting** [1] - 25:12
**lucky** [1] - 27:9

## M

**machine** [1] - 1:20
**made** [6] - 14:23, 16:14, 20:19, 32:10, 33:12
**make** [7] - 5:13, 9:25, 16:4, 17:12, 24:17, 25:3, 32:3
**makes** [3] - 32:15, 32:17, 32:24
**making** [3] - 19:16, 32:11, 32:22
**man** [1] - 25:9
**mandatory** [6] - 3:22, 5:6, 13:15, 18:9, 29:10
**marijuana** [1] - 26:4
**marked** [1] - 8:12
**market** [1] - 15:22
**Marshal** [1] - 29:24
**matter** [4] - 3:2, 3:4, 9:3, 16:3
**matters** [2] - 9:23, 18:8
**mature** [1] - 19:20
**maturity** [3] - 19:18, 19:19, 19:24
**maximum** [1] - 4:10
**meaning** [1] - 12:14
**means** [1] - 30:16
**mechanisms** [1] - 22:5
**Medical** [1] - 14:17
**meet** [1] - 5:21
**meeting** [1] - 22:6

**meets** [1] - 13:12
**member** [1] - 28:2
**memorandum** [2] - 8:7, 8:8
**mention** [1] - 24:10
**mentioned** [2] - 16:13, 26:11
**Mercy** [1] - 14:17
**merely** [1] - 17:11
**met** [2] - 5:18, 5:19
**middle** [1] - 19:14
**might** [1] - 6:8
**milestones** [1] - 23:11
**million** [2] - 4:9
**mind** [1] - 27:6
**minimum** [4] - 3:22, 5:6, 13:15, 18:9
**minor** [2] - 25:11, 25:12
**missed** [2] - 22:20, 23:1
**missing** [1] - 23:11
**mitigating** [1] - 27:20
**money** [7] - 3:17, 3:24, 7:5, 24:15, 24:17, 25:3
**months** [12] - 8:2, 10:12, 17:3, 18:9, 20:21, 22:2, 23:10, 27:18, 27:24, 28:7, 28:20
**morning** [1] - 23:7
**motion** [8] - 7:17, 8:9, 16:15, 16:18, 17:13, 20:23, 31:18, 32:3
**moved** [4] - 19:15, 21:19, 21:22, 22:8
**moves** [1] - 7:15
**moving** [2] - 8:21, 9:6
**MR** [28] - 4:17, 4:21, 4:25, 5:11, 5:16, 7:15, 8:17, 8:19, 8:22, 8:24, 9:4, 9:7, 9:9, 9:17, 9:19, 10:3, 11:15, 13:18, 13:21, 16:7, 17:1, 18:1, 18:6, 30:3, 30:8, 30:12, 33:21, 33:24
**multiple** [4] - 12:9, 13:7, 26:10, 31:23
**Murray** [5] - 1:19, 1:23, 35:2, 35:12, 35:12
**must** [7] - 4:11, 29:9, 29:10, 29:11, 29:13, 29:15, 29:19

## N

**namely** [3] - 10:6, 10:11, 11:5
**Narcan** [1] - 27:10
**nature** [1] - 17:3
**necessary** [5] - 20:25, 24:7, 27:25, 28:8, 28:15
**need** [4] - 9:3, 15:15, 26:22, 33:9
**needed** [1] - 23:6
**needs** [3] - 20:16, 20:17, 29:1
**never** [1] - 22:25
**next** [4] - 18:24, 31:2, 31:3, 33:9
**night** [3] - 18:24, 22:22, 23:6
**noncriminal** [1] - 20:11
**none** [1] - 29:22
**NORTHERN** [1] - 1:1
**Northern** [1] - 31:1
**noted** [5] - 5:1, 12:10, 14:18, 20:5, 24:14
**notice** [3] - 30:25, 31:2, 33:9
**number** [1] - 3:4
**nursery** [1] - 22:23

## O

**objected** [2] - 5:7, 13:23
**objection** [3] - 5:5, 8:23, 9:8
**objections** [6] - 4:19, 5:2, 5:9, 5:20, 6:13, 15:24
**obtained** [2] - 14:14, 14:19
**obvious** [1] - 15:22
**obviously** [3] - 11:16, 18:14, 20:6
**occasions** [3] - 10:6, 11:5, 17:21
**occurred** [1] - 12:3
**OF** [2] - 1:1, 1:3
**offense** [13] - 5:3, 6:20, 7:6, 7:8, 7:19, 7:25, 10:5, 17:4, 18:16, 24:11, 24:12, 26:7, 28:12
**offenses** [2] - 6:20, 25:11
**Office** [1] - 1:10
**office** [7] - 6:16, 6:19, 6:24, 7:2, 7:9, 7:20, 16:2
**officer** [1] - 29:14
**Officer** [2] - 3:9, 30:9
**OFFICER** [1] - 30:10
**officers** [1] - 26:1
**old** [2] - 19:22, 22:14
**omissions** [1] - 10:23
**once** [3] - 21:23, 22:7, 24:18
**one** [5] - 22:14, 26:4, 26:10, 30:3
**online** [1] - 23:4
**open** [2] - 3:1, 16:12
**opinion** [1] - 20:17
**opportunity** [5] - 4:15, 4:24, 5:24, 6:1, 21:3
**opposed** [1] - 18:20
**option** [1] - 4:7
**options** [1] - 11:17
**order** [2] - 18:23, 29:16
**ordered** [1] - 29:19
**Ordered** [1] - 1:21
**original** [1] - 18:10
**otherwise** [2] - 27:14, 27:18
**outcome** [1] - 15:15
**outside** [1] - 32:18
**overdose** [14] - 10:6, 10:19, 11:5, 11:20, 12:16, 12:24, 13:24, 14:4, 14:8, 14:18, 15:11, 15:21, 18:17, 18:24
**overdosed** [4] - 12:4, 14:15, 14:22, 18:21
**overdoses** [3] - 15:5, 15:6, 17:21
**overruling** [1] - 15:24
**own** [8] - 5:25, 17:11, 20:19, 25:24, 25:25, 26:2, 27:21

## P

**p.m** [2] - 1:18, 34:2
**PAGE** [1] - 2:2
**page** [1] - 6:17
**paid** [1] - 14:23
**PAMurrayReporting@gmail.com** [1] - 1:25
**paragraph** [7] - 5:2, 5:5, 5:7, 7:21, 7:22, 14:16, 30:19
**paragraphs** [4] - 13:22, 14:11, 15:25, 29:18
**parole** [3] - 3:23, 3:25, 4:2
**part** [2] - 11:3, 14:9
**participate** [1] - 29:2
**participated** [1] - 19:15
**particular** [1] - 27:20
**parties** [4] - 8:6, 9:21, 35:7, 35:8
**party** [1] - 9:14
**Patrice** [5] - 1:19, 1:23, 35:2, 35:12, 35:12
**pay** [2] - 29:19, 29:21
**payments** [1] - 14:23
**people** [8] - 22:6, 23:18, 23:19, 24:19, 25:1, 25:17, 26:21, 27:9
**performance** [1] - 28:5
**period** [1] - 12:5
**person** [4] - 5:19, 5:21, 19:16, 23:15
**personal** [1] - 20:18
**personally** [1] - 3:7
**pertinent** [1] - 8:15
**photo** [1] - 23:12
**photographs** [1] - 8:12
**physical** [1] - 27:3
**pill** [2] - 12:20, 17:6
**pills** [16] - 10:8, 10:12, 10:16, 10:18, 13:25, 14:8, 14:14, 14:19, 14:21, 14:24, 15:10, 15:20, 15:22, 17:6, 21:17
**place** [3] - 4:4, 35:3, 35:5
**placed** [1] - 29:5
**places** [2] - 7:23, 25:20
**plain** [1] - 15:2
**Plaintiff** [1] - 1:4
**pleadings** [2] - 8:5, 8:15
**pled** [4] - 3:12, 7:8, 13:3, 26:6
**PO** [2] - 1:24, 35:13
**point** [3] - 18:4, 28:5, 33:13
**points** [1] - 7:23
**poison** [2] - 24:17, 24:18
**pool** [1] - 12:17
**portions** [2] - 11:6, 14:2
**poses** [1] - 17:7
**position** [3] - 7:12, 32:8, 32:9
**positive** [2] - 20:8, 26:4
**possess** [1] - 29:12
**possession** [1] - 25:12
**possibility** [4] - 3:23, 3:25, 20:15, 23:25
**possible** [1] - 4:10
**post** [1] - 12:2
**potential** [1] - 20:1
**potentially** [1] - 13:14
**pregnant** [1] - 22:10
**preparation** [1] - 8:3
**preponderance** [2] - 14:6, 14:7
**present** [2] - 3:7, 3:8
**presentence** [13] - 3:10, 4:16, 5:10, 5:11, 5:18, 6:11, 8:4, 11:7, 11:24, 13:22, 14:10, 15:2, 29:18
**pretrial** [3] - 20:21, 22:16, 26:3
**pretty** [2] - 19:21, 24:3
**previously** [1] - 17:18
**priorities** [1] - 23:16
**prison** [4] - 3:23, 3:25, 4:2, 4:3
**Prisons** [3] - 28:19, 28:24, 29:2
**PROBATION** [1] - 30:10
**Probation** [1] - 3:9
**probation** [9] - 4:7, 6:16, 6:19, 6:24, 7:2, 7:9, 7:20, 16:2, 29:14
**problem** [1] - 32:8
**proceedings** [3] - 3:1, 35:4, 35:5
**Proceedings** [1] - 34:2
**productive** [1] - 28:2
**profit** [1] - 17:12
**Program** [1] - 29:3
**program** [1] - 29:4
**promise** [4] - 28:1, 28:4, 28:6, 32:12
**promises** [4] - 32:11, 32:16, 32:22, 33:11
**properly** [1] - 16:1
**prosecutor** [1] - 31:19
**protect** [1] - 26:24
**proven** [1] - 14:7
**provided** [3] - 8:10, 8:11, 25:16
**providing** [1] - 20:7

**proximity** [1] - 28:24
**PSI** [5] - 13:4, 19:12, 19:21, 20:5, 20:17
**published** [1] - 5:18
**punishable** [3] - 3:20, 3:21, 3:24
**purchase** [1] - 14:24
**purpose** [2] - 10:13, 10:15
**purposes** [1] - 6:17
**put** [3] - 17:14, 24:18, 24:21

**Q**

**qualify** [1] - 10:4
**qualifying** [2] - 15:8, 15:12
**quantity** [1] - 18:13
**questions** [4] - 6:8, 6:11, 6:12, 31:10

**R**

**raise** [1] - 33:10
**range** [4] - 8:1, 18:10, 27:17, 28:14
**Rapids** [6] - 1:10, 1:13, 1:18, 1:24, 31:1, 35:14
**reached** [1] - 12:2
**reading** [2] - 12:10, 33:11
**realized** [1] - 17:20
**really** [6] - 10:25, 11:21, 12:25, 19:5, 25:9, 25:17
**reason** [4] - 11:18, 31:18, 31:23, 32:3
**reasonable** [1] - 15:19
**reasonably** [6] - 10:17, 10:19, 10:25, 11:2, 15:16, 15:20
**reasons** [2] - 20:13, 20:22
**receive** [1] - 7:13
**received** [5] - 8:25, 9:1, 9:10, 9:11, 14:1
**receiving** [1] - 11:25
**recommend** [1] - 29:1
**recommended** [1] - 28:23
**record** [4] - 5:14, 9:3, 16:4, 35:5
**rededicated** [1] - 19:11
**redistribute** [1] - 10:13
**reduced** [1] - 5:4
**reduction** [5] - 7:10, 7:14, 13:14, 32:12, 32:13
**referred** [1] - 30:14
**reflect** [5] - 11:22, 17:19, 26:23, 28:1, 28:11
**reflected** [3] - 19:11, 19:12, 20:17
**regarding** [2] - 5:19, 19:3
**regardless** [1] - 32:16
**regards** [2] - 5:11, 18:3
**related** [4] - 14:18, 15:5, 15:17, 35:6
**relative** [1] - 35:7
**relatively** [2] - 23:25, 25:9
**release** [8] - 4:4, 4:6, 20:21, 22:16, 26:3, 29:5, 29:6, 29:9
**released** [1] - 14:17
**relevant** [6] - 8:14, 10:9, 10:21, 10:22, 11:4, 13:1
**relief** [1] - 10:4
**remaining** [1] - 16:17
**remanded** [1] - 29:23
**remotely** [1] - 19:2
**removal** [1] - 26:15
**removed** [1] - 19:10
**removes** [1] - 11:11
**report** [19] - 3:10, 4:16, 4:20, 4:24, 5:10, 5:12, 5:14, 5:18, 5:25, 6:4, 6:8, 6:11, 8:5, 11:7, 11:24, 13:23, 14:11, 15:2, 29:18
**reported** [2] - 1:18, 35:3
**Reporter** [4] - 1:19, 1:23, 35:2, 35:13
**represent** [1] - 31:7
**represented** [2] - 3:5, 3:7
**Residential** [1] - 29:3
**respond** [1] - 13:19
**responsibility** [2] - 7:10, 7:18
**responsible** [4] - 6:25, 15:9, 24:19, 25:17
**restitution** [1] - 29:22
**result** [2] - 11:20, 14:8
**resulted** [5] - 7:23, 10:23, 11:4, 15:17, 27:8
**resulting** [1] - 27:3
**returned** [1] - 18:22
**review** [2] - 4:15, 4:24
**reviewed** [2] - 8:3, 8:5
**rhymes** [1] - 22:23
**Ridgeway** [13] - 11:20, 12:4, 12:24, 14:15, 14:17, 14:20, 14:25, 15:5, 18:17, 18:20, 18:21, 19:1
**rights** [2] - 30:6, 30:15
**Rio** [2] - 22:12, 22:13
**RMR** [2] - 1:23, 35:12
**road** [2] - 17:18, 24:20
**rough** [1] - 21:19
**rule** [1] - 9:22
**ruling** [2] - 10:1, 18:25
**rulings** [1] - 18:7

**S**

**S.E** [3] - 1:10, 1:12, 1:17
**safety** [11] - 5:4, 9:13, 9:21, 10:4, 11:11, 13:10, 15:8, 15:13, 16:1, 18:7, 23:23
**safety-valve** [5] - 5:4, 9:21, 11:11, 15:8, 15:13
**Salado** [2] - 22:12, 22:13
**sale** [1] - 19:14
**sample** [1] - 29:13
**Sara** [1] - 3:9
**school** [8] - 20:4, 20:5, 21:20, 21:21, 21:22, 25:18, 25:19, 28:5
**scope** [4] - 10:10, 10:24, 11:1, 15:18
**scored** [2] - 7:21, 16:1
**seal** [2] - 19:4, 19:5
**sealed** [3] - 9:3, 16:4, 16:9
**Second** [1] - 1:12
**second** [2] - 23:12, 23:14
**section** [3] - 7:3, 7:11, 7:14
**Section** [3] - 3:19, 7:6, 24:9
**Sections** [1] - 3:16
**security** [1] - 28:25
**see** [2] - 23:18, 32:8
**seeking** [1] - 27:2
**selling** [2] - 17:10, 17:11
**semester** [1] - 22:18
**sending** [1] - 17:5
**sent** [1] - 10:11
**sentence** [21] - 3:22, 4:1, 4:3, 16:16, 16:19, 16:23, 17:3, 17:23, 18:9, 20:15, 20:24, 21:5, 24:6, 26:8, 26:21, 26:23, 27:24, 28:7, 28:9, 28:13, 31:4
**SENTENCING** [1] - 1:15
**sentencing** [13] - 3:4, 5:22, 8:7, 8:8, 18:3, 19:3, 24:8, 26:9, 26:19, 27:25, 28:8, 28:10, 28:16
**separate** [1] - 17:21
**separated** [1] - 23:17
**separation** [2] - 12:9, 12:13
**serious** [5] - 10:5, 11:8, 15:7, 27:8, 28:12
**seriousness** [4] - 17:20, 26:16, 26:23, 28:11
**served** [4] - 4:3, 22:14, 28:21, 29:8
**services** [1] - 31:6
**set** [10] - 10:7, 11:3, 11:24, 12:15, 13:3, 17:15, 29:16, 29:17, 30:18, 35:9
**setting** [1] - 24:22
**Seventh** [2] - 1:10, 1:17
**several** [1] - 20:21
**severe** [2] - 26:21, 26:23
**shipments** [1] - 11:25
**Shorthand** [2] - 1:19, 35:2
**shorthand** [2] - 1:20, 35:4
**show** [1] - 15:15
**showed** [1] - 25:17
**shown** [1] - 20:20
**shows** [1] - 12:1
**sic** [1] - 18:22
**sidebar** [2] - 16:3, 16:9
**sign** [2] - 31:18, 32:21
**signed** [8] - 30:3, 30:16, 31:22, 32:4, 32:10, 32:15, 32:24, 32:25
**significant** [1] - 28:9
**simply** [3] - 15:16, 17:14, 17:19
**sing** [1] - 22:22
**situation** [5] - 11:21, 12:23, 18:20, 19:7, 25:23
**sleep** [2] - 23:6, 23:8
**so-called** [1] - 5:4
**society** [1] - 28:3
**sold** [1] - 18:23
**someone** [1] - 15:21
**soon** [1] - 23:25
**sorry** [2] - 21:14, 23:9
**source** [1] - 12:19
**sources** [2] - 11:23, 13:9
**special** [4] - 4:11, 4:12, 29:17, 29:20
**specific** [1] - 26:13
**spiderweb** [1] - 13:6
**spiderweb-type** [1] - 13:6
**spring** [1] - 12:19
**standard** [3] - 10:20, 29:15
**standpoint** [1] - 15:14
**start** [1] - 22:4
**started** [1] - 21:25
**State** [1] - 35:2
**state** [1] - 29:11
**states** [2] - 10:22, 14:16
**STATES** [2] - 1:1, 1:3
**States** [13] - 1:11, 3:3, 3:5, 3:6, 3:9, 3:15, 3:19, 4:14, 7:5, 24:9, 29:19, 29:24, 30:7
**statute** [1] - 3:20
**statutes** [1] - 4:7
**statutory** [1] - 13:15
**stay** [1] - 23:2
**stay-at-home** [1] - 23:2
**still** [2] - 9:15, 22:8
**Street** [1] - 1:12
**substance** [3] - 3:14, 29:4, 29:12
**substances** [1] - 11:23
**suffered** [1] - 11:7
**sufficient** [3] - 6:4, 24:6, 28:14
**sufficiently** [2] - 26:21, 26:23
**Suite** [1] - 1:12
**summarized** [1] - 7:21
**supervised** [4] - 4:4, 4:6, 29:6, 29:9
**supervision** [1] - 29:16
**support** [5] - 8:12, 17:11, 19:12, 20:8
**supported** [1] - 8:7
**Supreme** [1] - 19:8
**surf** [1] - 22:3


***Contact Patrice Murray at PAMurrayReporting@gmail.com for a complete copy of the transcript.***

**surrendered** [1] - 30:17

## T

**table** [1] - 13:15
**talk** [1] - 30:14
**talked** [1] - 10:24
**talking** [1] - 26:12
**tell** [2] - 21:3, 30:19
**ten** [2] - 14:13, 14:19
**tend** [1] - 26:12
**term** [5] - 4:4, 28:20, 29:6
**terms** [3] - 12:6, 13:2, 30:21
**test** [1] - 15:18
**testing** [1] - 26:4
**THE** [55] - 1:1, 1:1, 1:16, 3:2, 4:18, 4:22, 5:1, 5:13, 5:23, 6:1, 6:3, 6:6, 6:7, 6:9, 6:10, 6:12, 6:14, 7:17, 8:18, 8:20, 8:23, 8:25, 9:2, 9:5, 9:8, 9:10, 9:12, 9:18, 9:20, 11:13, 13:17, 13:20, 14:5, 16:13, 17:24, 18:5, 21:1, 21:10, 21:11, 21:12, 24:5, 30:5, 30:9, 30:11, 30:13, 31:9, 31:10, 31:12, 31:14, 31:15, 32:7, 33:18, 33:19, 33:23, 33:25
**theft** [1] - 25:13
**theirselves** [1] - 25:4
**therein** [1] - 5:20
**third** [1] - 7:16
**throughout** [3] - 22:15, 23:6, 23:18
**Title** [4] - 3:15, 3:18, 7:5, 24:8
**today** [9] - 5:22, 6:11, 9:3, 17:16, 18:8, 18:25, 24:10, 31:11, 33:21
**today's** [2] - 8:3, 8:15
**together** [2] - 11:9, 29:17
**took** [1] - 21:22
**total** [6] - 4:10, 4:12, 7:19, 7:24, 17:5, 18:16
**toward** [1] - 14:24
**trafficking** [1] - 25:13
**transcribed** [1] - 35:4
**Transcript** [2] - 1:21, 1:21
**transcript** [1] - 35:5
**Treatment** [1] - 29:3
**treatment** [1] - 29:4
**trespass** [1] - 25:13
**troubled** [1] - 25:15
**troubling** [1] - 24:13
**true** [1] - 35:5
**trying** [3] - 12:24, 20:9, 26:8
**turn** [2] - 9:22, 17:7
**turned** [1] - 22:20
**turning** [2] - 24:11, 27:1
**two** [9] - 3:13, 10:6, 11:5, 11:16, 17:21, 22:20, 27:22
**two-count** [1] - 3:13
**type** [3] - 13:6, 23:24, 26:22

## U

**U.S** [1] - 1:10
**ultimate** [2] - 16:16, 27:8
**ultimately** [4] - 19:22, 25:16, 26:5, 27:7
**under** [15] - 4:7, 7:3, 7:5, 7:10, 7:14, 10:21, 19:4, 19:5, 27:2, 27:12, 30:15, 30:18, 30:20, 31:15, 32:6
**under-seal** [1] - 19:5
**understood** [1] - 32:17
**undertaken** [1] - 10:10
**unfair** [1] - 32:5
**unhappy** [1] - 33:16
**unique** [2] - 25:7, 25:23
**UNITED** [2] - 1:1, 1:3
**United** [13] - 1:11, 3:3, 3:5, 3:6, 3:8, 3:15, 3:18, 4:14, 7:5, 24:9, 29:19, 29:23, 30:7
**unlawfully** [1] - 29:12
**unobjected** [4] - 11:6, 14:2, 14:12, 15:1
**unobjected-to** [3] - 11:6, 14:2, 15:1
**up** [13] - 3:22, 3:24, 4:5, 4:6, 4:8, 4:9, 9:3, 12:16, 16:3, 23:7, 25:21, 30:17, 31:3
**upbringing** [2] - 19:22, 21:19
**upward** [15] - 5:8, 8:9, 8:10, 16:15, 17:2, 17:13, 20:14, 27:1, 27:2, 27:4, 27:5, 27:11, 27:15
**use** [1] - 29:12
**user** [2] - 24:16, 27:8
**using** [4] - 1:19, 22:5, 22:10, 25:4

## V

**valve** [11] - 5:4, 9:13, 9:21, 10:4, 11:11, 13:11, 15:8, 15:13, 16:1, 18:7, 23:24
**variance** [7] - 8:10, 16:16, 17:14, 20:15, 27:5, 27:11, 27:15
**vary** [2] - 17:2, 27:13
**versus** [1] - 3:3
**video** [1] - 22:21
**violation** [3] - 3:15, 3:18, 26:4
**violations** [1] - 25:14
**violence** [1] - 25:14
**voluntary** [1] - 26:15
**VS** [1] - 1:5

## W

**waive** [1] - 31:22
**waiver** [2] - 30:1, 30:15
**walk** [1] - 26:1
**want** [5] - 13:21, 18:2, 22:10, 24:21, 33:8
**wanted** [1] - 23:2
**wants** [1] - 25:23
**watch** [1] - 23:4
**Watley** [2] - 12:8, 12:18
**ways** [1] - 25:7
**weapons** [1] - 25:14
**welcome** [1] - 33:17
**WHEREOF** [1] - 35:9
**Wiezorek** [1] - 1:12
**wife** [3] - 23:2, 23:5, 23:19
**Williams** [1] - 35:3
**WILLIAMS** [1] - 1:16
**wishes** [1] - 16:22
**WITNESS** [1] - 35:9
**witnesses** [1] - 9:15
**woman** [1] - 27:8
**work** [5] - 23:3, 23:6, 23:19, 25:22, 28:6
**working** [3] - 20:3, 20:10, 23:1
**written** [3] - 30:25, 31:2, 32:2
**wrote** [1] - 32:1

## Y

**years** [13] - 3:22, 3:25, 4:2, 4:5, 4:6, 12:12, 19:22, 22:14, 25:21, 27:22, 29:6, 29:7
**young** [1] - 25:9